## Progress Laundry Company v. Hamilton.

(Decided March 27, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Injunction—Owner's "Trade Secret" will be Protected by Injunction.—A "trade secret" is a plan or process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it is necessary to confide it. It is a property right, and differs from a patent in that as soon as the secret is discovered, either by an examination of the product or any other honest way, the discoverer has the full right to use it. A process commonly known to the trade is not a trade secret.

2. Injunction—Former Employee's Solicitation of Laundry Business from Customers Formerly Served by Him Held Not Enjoinable as Appropriation of Trade Secret.—Former employee's solicitation, in behalf of rival competitor, of laundry business from customers formerly served by him and knowledge of whom he acquired from memory, held not enjoinable as appropriation of trade secret, in absence of contract precluding him from such solicitation.

3. Courts—Opinion or Order of Court of Appeals, Disposing of Motion for Reinstatement of Dissolved Preliminary Primary Injunction, will be Followed, if Sound.—Opinion or order of Court of Appeals disposing of motion for reinstatement of preliminary injunction dissolved by trial court, will be followed on a subsequent appeal from the final judgment, if such opinion or order is sound.

RICHARD B. CRAWFORD and HARDIN H. HERR for appellant.

WM. M. DUFFY and A. J. BIZOT for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellee and defendant below, Dave Hamilton, on September 1, 1918, accepted employment with the appellant and plaintiff below, Progress Laundry Company, engaged in the laundry business in the city of Louisville, to take up, deliver and collect for laundering upon and over a prescribed route in the city, known as route number 4. He followed that employment faithfully and diligently for more than five years, when he voluntarily retired and accepted employment with a rival competitor of plaintiff and was proposing to solicit the trade of his former customers while he was working for plaintiff, when it filed this equity action against him to enjoin him

from soliciting any laundry business from any of the customers he served while in the employment of plaintiff. There was no allegation in the petition that he was under any express contractual duty not to make such solicitation, nor was it alleged that he had surreptitiously, or otherwise, obtained a list of plaintiff's customers on his formerly served route from its books; but his only knowledge of them was from his memory and acquaintance with them obtained while he was serving plaintiff. A demurrer was filed to the petition, which the court sustained, and plaintiff declining to plead further its petition was dismissed, and to reverse that judgment it prosecutes this appeal.

Counsel for plaintiff has filed a most elaborate and learned brief, a large part of which is devoted to establishing that neither a present nor former employe, or any other person confidentially obtaining the information, may appropriate to his own use or the use of another "trade secrets" of his commercially engaged employer. Having established that well settled doctrine counsel then argues that a list from memory of customers is properly catalogued as a trade secret so as to come within the rule of equity protecting its owner from its appropriation and use by former employes or others acquiring a knowledge of it while serving the owner in some confidential capacity.

That a strictly "trade secret" will be so protected in the hands of its owner by the remedy of injunction seems to be universally accepted, there appearing to be no court holding to the contrary. 22 Cyc. 843; 32 Corpus Juris, 156-157; 14 R. C. L. 401-402, par. 102, and a great number of cases from the American and English courts cited in the notes to those texts, including those hereinafter referred to. The only question for determination, and the decisive one in this case is: Whether the information possessed by defendant in this case and obtained by him in the manner he did may be classified as a "trade secret" so as to come within the protection of that rule?

Strangely enough, as it appears to us, some of the American courts have so adjudged, while a larger number, according to our opinion, correctly hold to the contrary. The text in 22 Cyc. 842, in an effort to concretely define the term "trade secret," says: "A trade secret is a plan or process, tool, mechanism or compound, known only to its owner and those of his employes to whom it is

necessary to confide it. It is a property right which
equity, in the exercise of its power to prevent a breach
of trust, will protect. It differs from a patent in that as
soon as a secret is discovered, either by an examination
of the product or in any other honest way, the discoverer
has the full right to use it. A process commonly known
to the trade is not a trade secret and will not be protected
by injunction.'' That definition meets with our approval
and is, according to our opinion, sufficiently broad to
cover and protect all applied methods, formulas and pro-
cesses in which a proprietary interest may be acquired
in connection with the manufacturing, and even market-
ing the product handled and disposed of by the employer;
for it must be remembered that the basis of the protec-
tion of a trade secret is that its owner, because of his
ingenuity in inventing and appropriating it, has ac-
quired a property right therein and which presupposes
the exercising of some business faculty not usually pos-
sessed by others engaged in a like business. It is, there-
fore, somewhat akin to the rights of an inventor who
protects his design by having it patented, although, as
held by the cases and authorities, it is not necessary for
a patent to have been actually issued in order to entitle
the owner of the trade secret to its protection by injunc-
tion.

It would, therefore, seem that without supporting
cases the mere knowledge of a list of customers, which is
common and is essential and necessary to the prosecu-
tion of any business, would not necessarily be the product
of any kind of special ingenuity, but rather that it was
acquired because of other facts common to all commer-
cial activities and trades and without which none of them
would succeed. Moreover, to hold that a list of cus-
tomers, obtained in the manner as did defendant in this
case, could not be solicited by him (although his efforts
may have largely assisted in contributing to the num-
ber) when subsequently engaged in a rival competing
business is, according to our opinion, directly antagonis-
tic to another cherished principle of law, i. e., that com-
petition should not be stifled, but be free and untram-
meled. If defendant herein could be enjoined from solicit-
ing his former customers on route number 4 in the prose-
cution of the same business for his new employer, then a
traveling salesman who is ordinarily called a ''drummer''
for a particular business within a larger territory limited

only by state lines, or even to a greater extent, could not engage in business thereafter for another, or others, conducting a like business within that territory by selling to his former customers. The inevitable result of which would be that a salesman must be forever barred from selling to a customer whose acquaintance he formed during his first employment. If he should succeed in creating a new list in the same territory, for a subsequent employer, and for any cause that employment should be terminated and a similar one accepted from another rival competitor of the two, he would then be barred from soliciting sales from either list of customers and he would eventually be forced to entirely abandon that territory and seek other fields of labor for which, in the meantime, he had become especially equipped.

Plaintiff's counsel cite a great number of cases in support of his contention, the most of which may be readily differentiated from this one because of the difference in their facts. Some of them involve undisputed *trade secrets* within the definition, *supra;* in others there was an express contract by the employe that he would not appropriate such information either for himself or another upon retiring from the employment; while in still others the thing attempted to be appropriated was a copied list of the customers made and taken from the employer's books, which evidently was his property, and so far as we have been able to discover only two of the cases relied on by counsel measure squarely up to the facts of this case, and hold that an acquired list from memory of customers by an employe is the acquisition of a trade secret belonging to his employer and which the former may not solicit their patronage either for himself or while serving another engaged in a similar business. Those cases are: Empire Steam Laundry Co. v. Lozier, 165 Calif. 95, 44 L. R. A. (N .S.) 1159, 130 Pacific 1180, Ann. Cas. 1914C 628, and some subsequent cases from the same court following that one, and the People's Coat, Apron & Towel Supply Co. v. Light, 157 N. Y. S. 15, 224 N. Y. 727, and perhaps some others from the same courts, and they, particularly the California case, seem to hold that under the same or similar facts here involved, the employe may be enjoined as herein attempted.

On the contrary, the Supreme Courts of the states of Georgia, Maryland, Minnesota and Kansas, before which the exact question was presented, hold to the contrary, in the cases of Stein v. National Life Insurance Asso.,

105 Ga. 821, 46 L. R. A. 150, 32 S. E. 615; Fulton-Grand Laundry Co. v. Johnson, 140 Md. 359, 117 Atl. 753, 23 A. L. R. 420; Boone v. Krieg, 156 Minn. 83, 194 N. W. 92, and Garst v. Scott, 114 Kans. 676, 220 Pac. 277, 34 A. L. R. 395. Opinions from intermediate appellate courts in the same jurisdiction follow the opinions of their highest reviewing court and take the same positions taken by them, and a number of those intermediate opinions are cited in brief. In the annotations to the Johnson case, from the Maryland Supreme Court, as reported in 23 A. L. R., the learned editorial staff begins the discussion with this statement: "It is held in the majority of the cases which have passed on the question that in the absence of an express contract, on taking a new employment in a competing business, an employe may solicit for his new employer the business of his former customers, and will not be enjoined from so doing, at the instance of his former employer," which is followed by supporting opinions of a number of states but which we will not insert in this opinion. The annotation points out the distinguishing facts of the cases reviewed, and shows that in all of them except those relied on by plaintiff as hereinbefore referred to, wherein the defendant was enjoined, there was either an actual appropriation of a technical trade secret or the violation of an express contract or the appropriation of a list copied from plaintiff's books.

Since the publication and annotation of the Johnson case, as reported in 23 A. L. R., the Kansas court handed down the opinion in the case of Garst v. Scott, *supra,* in which the court denied the right of the employer to enjoin his employe from using the same kind of information here sought to be enjoined, and upon the precise point involved the opinion says: "A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, all the information that he has received, so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer, and cannot be taken or used by the employe for his own benefit, *but customers are not trade secrets.* They are not property. The right to trade with them may be property, but that right was not interfered with by the defendant. Written lists of customers may be property, but the defendant did not take any such list. Skill and knowledge acquired or information obtained cannot be left behind so

long as those things exist in the mind of the employe. All that knowledge, skill, and information, except trade secrets, become a part of his equipment for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information, or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them." (Our italics.) The annotations to that opinion, as reported in 34 A. L. R., and in which the prior case of Morrison v. Woodbury, 105 Kan. 617, was practically overruled, the annotations again say: "The cases hold that, in the absence of express contract provision, a former employe may not be enjoined from merely soliciting or accepting business from the customers of his former employer."

We, therefore, find that a majority of the opinions direcly dealing with the exact point, deny the right of injunction in such cases, upon the ground that the thing attempted to be appropriated by the retiring employe is not a trade secret within the equity rule extending to the employer the right to their protection, and which holding is deeply imbedded in both logic and sound reasoning.

Furthermore, in this case there was issued upon its filing a temporary injunction, which the trial court afterwards dissolved, followed by an application being made before Judge D. A. McCandless, a member of this court, to reinstate it. The motion was heard before the entire court and was overruled by Judge McCandless, who, in disposing of it, said: "The motion being submitted, was considered by the whole court, the conclusion being that an order directing said injunction be reinstated should not be granted." While the rule is, that an opinion or order of that kind is not binding upon us in a subsequent appeal from a final judgment, yet, it is accepted as persuasive, and if found to be sound will be followed. Lewis, Banking Commissioner v. Creasy Corporation, 198 Ky. 409; Watkins v. Pinkston, 190 Ky. 455; Campbell v. Mims, 149 Ky. 101, and Fish v. South, 185 Ky. 663. The question was thoroughly considered by the whole court in disposing of the motion made before Judge McCandless and nothing has occurred since then to change our views. On the contrary, the exhaustive annotations, *supra,* in 23 and 34 A. L. R. have appeared

since then, and their undoubted effect is to increase our confidence in the soundness of our former holding rather than to weaken it.

The trial court having adopted the views herein expressed, its judgment is affirmed.