[No. 19543. Department Two. March 4, 1926.]

ICE DELIVERY COMPANY OF SPOKANE, *Appellant,* v.
NEWELL S. DAVIS, *Respondent.*[1]

[1] APPEAL (272)—RECORD—AFFIDAVITS. Affidavits used on a hearing for a temporary injunction cannot be considered on appeal when not brought up by bill of exceptions or statement of facts.

[2] INJUNCTION (16)—PROTECTION OF RIGHTS IN GENERAL—SOLICITATION OF CUSTOMERS BY FORMER EMPLOYEE. An ice company is not entitled to an injunction to prevent a former employee, who had quit the service for some months, from accepting service with a competitor and from soliciting plaintiff's former customers on his old route, with whom he had gained acquaintance while delivering ice for plaintiff, in the absence of any plan or scheme to defraud (MACKINTOSH, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered May 16, 1925, dismissing an action for an injunction upon sustaining a demurrer to the complaint. Affirmed.

*Stephens & Jack* and *Garrecht & Twohy,* for appellant.

*Lund & Dodds,* for respondent.

MITCHELL, J.—The Ice Delivery Company of Spokane, a corporation, commenced this action against Newell S. Davis seeking injunctive relief, "for such length of time as to the court may seem reasonable," against the defendant, preventing him from serving or soliciting ice customers of the plaintiff, known to the defendant as such by virtue of his former employment with plaintiff, for his present employer or any other employer except plaintiff, over a route known as the Rockwood route, or any part of it, in the city of Spokane, and from interfering in any way with the business of the plaintiff in the territory of that route.

[1] Reported in 243 Pac. 842.

An emergency restraining order was issued at the time
the complaint was filed, and at the same time an order
was entered . requiring the defendant to show cause
why an injunction *pendente lite* should not be granted.
On the date to which the hearing of the show cause
order was regularly continued, the defendant appeared
and, among other things, filed a general demurrer to
the complaint and a motion to dissolve the restraining
order, the motion being supported by affidavits. At
that time the right of the plaintiff to have the restrain-
ing order continued during the pendency of the action
was heard upon affidavits, and denied. At the same
time, an order was entered sustaining the demurrer to
the complaint. The plaintiff electing not to plead
further, a judgment was entered dismissing the action.
Plaintiff has appealed.

It is urged on behalf of the appellant that the
question is, whether or not the complaint states a
cause of action, and, incidentally, whether or not, upon
the complaint and affidavits filed, the appellant was
entitled to an injunction *pendente lite*. The latter part
of the question is not properly here on the merits.

[1] The order denying injunction *pendente lite*
shows that the hearing was had on affidavits on behalf
of both parties, and, although they are in the transcript,
they have not been settled or certified by the trial
judge in the nature of a bill of exceptions or statement
of facts, and under the uniform holding of this court
they cannot be considered.

The complaint, filed April 17, 1925, alleged, in sub-
stance, that the appellant is a corporation doing busi-
ness in Spokane, and that about June 1, 1919, the ap-
pellant employed the respondent as an ice man and
driver of a delivery wagon used in the delivery of ice
from the plant of the company to its patrons and
customers in what is known as the Rockwood route in

the city, and that he was thus continuously employed until October 2, 1924, except a small portion of the year 1920; that, by reason of such long employment, he served many of the appellant's customers for nearly all of that time, and thereby became acquainted with them (ordinarily the lady of the house who looked after the orders for ice), the quantity of ice, and days on which it was needed by the customers; that, when he commenced work for the appellant, there was turned over to him an established business of numerous old customers, which was added to from time to time by the efforts of both the appellant and respondent, and that the good will of the business of the route is a valuable asset of the appellant; that on October 2, 1924, he ceased working for the appellant, and on March 10, 1925, commenced work for a competitor of the appellant, and that, at the date of the complaint, he was serving or attempting to serve the same route formerly covered by him, or a part of it, soliciting those persons by telephone and personal interviews and thereby attempting to divert their patronage from appellant, and that unless restrained he will continue to do so; that irreparable damages will be caused the appellant that are not easy of ascertainment because of the peculiar nature of the situation. That the respondent is insolvent; that, at the time of the commencement of the action, the ice season was just starting; that the respondent was taking former customers of appellant over to respondent's new employer, and that there was need for emergency restraint.

The appellant cites and relies on the case of *Davis & Co. v. Miller,* 104 Wash. 444, 177 Pac. 323. The facts in the controversy between the parties in that case are spoken of in the case cited, and also in *State ex rel. Davis & Co. v. Superior Court,* 95 Wash. 258, 163 Pac. 765. There, it was shown that Davis & Co.

had been engaged for many years in business as a loan, rental, real estate and insurance agency. One of the main features of its business, in which it had built up a large and profitable clientele, was the care and management of business blocks, apartments, dwelling and other like properties. This was described as the "hub" of all the diversified agency activities of Davis & Co. Vincent D. Miller had worked for Davis & Co. in various capacities for about sixteen years, until November, 1916, at which time he quit their employment. For about eight years before leaving them he had been manager of the rental department, and, indeed, for some time had acted as general manager of all the business, and stood in a confidential relation to John Davis, the head of the concern. At the daily conferences of all employees of the concern Miller presided, after which meeting there would be a second one, attended only by John Davis, Miller and one other employee, to discuss prospective business, which it was thought best not to be discussed among the employees generally. Miller's relations to the business were of a high order of importance and confidence. All of the secrets, prospects and plans were confided to him. Upon leaving the employment of Davis & Co., he induced two other employees, one of whom at least had a considerable acquaintance with the customers of Davis & Co., to become employees of the Vincent D. Miller Co., which he organized in a few days to engage in business as a competitor of Davis & Co. That was his purpose. They began systematic solicitation of the customers of Davis & Co., with whom Miller had a personal acquaintance through his connection with Davis & Co., to transfer their business to his company. In a very short time their efforts had a very pronounced and disastrous effect on the business of Davis & Co.,

who sought and obtained injunctive relief against Miller and the Vincent D. Miller Co., who, it appeared, were insolvent.

The facts and circumstances in that case and those in the present one are not parallel. In that case, the services under consideration were more largely of a personal sort in the performance of duties of the agency. The success of that service depended upon the personal ability of the agent to obtain as high rentals as possible and reasonable from tenants who were responsible and dependable. For those purposes each piece of property handled was a separate and individual thing. Davis & Co. had established a large and successful business of that kind, largely through the efforts of Miller within the knowledge of the clientele who were acquainted with him. The service was that of a representative between the owner and the tenant that necessitated the fixing of prices, terms of tenancy and knowledge of the financial standings of all the persons involved, with changes in that respect, if any, as they happened. Handling the business required daily conferences of all the employees and embraced confidences too important for others than John Davis, who was the head of the concern, Miller and one other employee. Miller was always there, he was the one man in the confidence of Davis.

Not so in the present case, which involved the sale of a commodity for consumption. Different from houses and rooms, a pound of ice is like another pound of ice, the same price to all in the same quantity. The customer may take it today and refuse it tomorrow. The substance of the service to the customer is the ice delivered, not the personal service of the carrier who delivers it.

In the *Davis* case, it was very clear that the disaffection from Davis & Co. and the organization of Miller

and the two other employees was for the avowed purpose of organizing and conducting a competing business, relying largely upon information and confidences that had been obtained by them as employees of Davis & Co. Indeed, they acted with such promptness, certainty and effect that it was charged in the complaint that they were guilty of a conspiracy against Davis & Co. Not so in the present case.

[2] The complaint here alleges that the respondent quit work for the appellant. There is no allegation that at that time, or at any other, it was his purpose to enter into a competing business for himself or for another. Some four months later, it is alleged, he entered the employment of a competing firm. There is no allegation that the respondent informed his new employer he had ever worked for the appellant or any other person in the delivery of ice, or that he was to deliver ice in any particular district in the city. Nor is there any allegation in the complaint that, at the time he entered into his new employment, it was understood that he was to deliver in the Rockwood district, or any part of it, or that upon commencing work he did deliver in that district. It is alleged that at the date of the complaint, about a month after the new service commenced, he was delivering in that district, but there is no allegation that he asked to be placed there, or that his employer knew he formerly delivered ice in that district. For aught that appears in the complaint, months after he quit work he obtained employment with another concern without any ulterior motives and without any understanding as to where he should work; and that, sometime afterward, he was put to work delivering ice in that district. What was he to do? Appellant says he should have risked his employment by telling his employer that he refused to do so, because once he had worked for a rival concern in the delivery

of ice in that district, or a part of it. Such is in effect the argument of the appellant, to which we cannot consent.

In the *Davis* case the laundry, milk and tea route cases were referred to, but not discussed. There are such cases which hold that, under their peculiar facts, former employers were entitled to injunctive relief. One of such cases was *Grand Union Tea Co. v. Dodds,* 164 Mich. 50, 128 N. W. 1090, 31 L. R. A. (N. S.) 263. It was a case wherein the driver of a delivery wagon used cards or order blanks and obtained orders for cash sales of goods to be delivered a week later. The names and addresses of the purchasers were written on the cards. For some months the driver contemplated a change of employment and, some days before ceasing work for the plaintiff, he agreed with his new employer to bring the former patrons of his route with him, and agreed to continue to solicit them thereafter. During the last week he told the customers of his plan, and obtained their patronage for his new employer. He immediately commenced work for the new employer and, before turning over his cards to his old employer, on leaving him, he erased all names of customers from the cards and canceled others by not putting them on the cards. He continued thereafter to work on the same route and solicit for his new employer.

Another case, *Eureka Laundry Co. v. Long,* 146 Wis. 205, 131 N. W. 412, 35 L. R. A. (N. S.) 119, was a case where the plaintiff obtained injunctive relief against a former employee, who was violating an agreement, entered into at the time of taking employment as a driver and solicitor on a laundry wagon, that during the term of his employment and for two years thereafter he would not solicit laundry trade for himself or another from any of plaintiff's customers supplied by him during the employment, and that he would not, during such

employment and for two years thereafter, either directly or indirectly, engage in the laundry business in that district.

In the case of *Robb v. Green,* 2 Q. B. D. (1895) 315, discussed in the *Davis* case, injunctive relief was granted a former employer, a dealer in live game and eggs, against defendant who, on quitting work for the plaintiff, had copied from his records the names and addresses of patrons, whose patronage he solicited upon commencing a competitive business of his own. In granting the relief, attention was called to the fact that the defendant was using stolen material, "without which, having regard to the wide extent over which the customers were spread, practically he could not canvass at all. . . . The order book contains collected together the names and addresses of purchases of pheasants' eggs spread over the length and breadth of England, Wales and Scotland."

The case of *People's Coat, Apron & Towel Supply Co. v. Light,* 171 App. Div. 671, 157 N. Y. Supp. 15, is referred to in the *Davis* case. It is of interest to note that, in the later case of *Scott & Co. v. Scott,* 186 App. Div. 518, 174 N. Y. Supp. 583, denying injunctive relief against a former employee, decided in 1919, the appellate division said:

"The case of *People's Coat, Apron & Towel Supply Co. v. Harry Light & Samuel Cohen,* 171 App. Div. 671, 157 N. Y. Supp. 15, affirmed 224 N. Y. 737, 121 N. E. 886, is not in conflict with the principles above stated. Because the facts of that case were not fully stated in the opinion, it is thought that this case has overruled the cases of *Peerless Pattern Co. v. Pictorial Review, supra,* and *Boosing v. Dorman, supra,* and has established the law to be that an employee, upon leaving his employer, may not solicit the former's customers, knowledge of whom he obtained while in such employment. That this misapprehension of the scope and

effect of that decision is somewhat general is shown by the decision of the Special Term in the instant case and motions for reargument of other appeals in this court. An examination of the case on appeal in the Court of Appeals discloses that in the order reversing the judgment the Appellate Division made certain findings of fact, among which were that Light was intrusted with the names of over 350 customers, offices, stores, and shops on the route and in the territory assigned to him, and with the names and addresses of over 1,000 customers on all the routes and in all the territories of the plaintiff over which he occasionally went, and that it was a part of his duty to solicit new customers, for the procuring of which increased salaries were paid to the drivers. Evidently the list of customers that Light did not serve was placed in his hands, that he might not waste his time soliciting business from present customers in his effort to get new business, and hence was confidential in its nature. Furthermore, it was found that the defendants Light and Cohen conspired to go into the said coat, apron and towel supply business with the intention of soliciting the patronage and business of the customers of the plaintiff, including those that had been served by the defendant Light while employed by the plaintiff, and that the defendants are now making use of and employing the information obtained and secured by the defendant Light solely by virtue of his employment by the plaintiff, and which was contained in the plaintiff's lists and route cards and route books; that Light, in calling upon the said customers, deceived certain of them into the belief and represented to them that he (Light) was still employed and serving them on behalf of the plaintiff, although in truth and fact he was then serving said customers on behalf of the defendant Cohen; and, finally, that the individuals referred to in the foregoing findings, being customers of the plaintiff, were not classified in any public trade list as probable or likely customers for service such as that furnished by the plaintiff. With these findings in the case, the judgment was right and in accord with well-settled principles of equity jurisprudence.''

Injunctive relief was denied in the recent case (1922) of *Fulton-Grand Laundry Co. v. Johnson,* 140 Md. 359, 117 Atl. 753, 23 A. L. R. 420. It was said in the opinion:

"The decisions in this country and in England seem to be fairly harmonious in principle as to the duty of courts to protect owners of trade secrets from disclosure by employees, but the divergences begin when the question to be determined in particular cases is whether the thing sought to be protected should be classed as a trade secret. And this is the real question presented in this case. A thing can hardly be said to be a secret, in the sense that it should be guarded by a court of equity, which is susceptible of discovery by observation, and which is open to the observation of anyone who thinks it worth while to observe. In this case it was not necessary for the new employer of appellee to seek his services in order to obtain the names of appellant's customers whom appellee served. He could obtain this information by the simple process of observing each day for a week where he stopped on his daily rounds. We have no difficulty in reaching the conclusion that there is no trade secret involved in this case."

Then upon referring to cases from other courts relied on by appellant, expressing contrary views, the court further stated:

"But while we do not decide that there might not be cases in which an employer should be protected from the use by an employee of a list of customers fraudulently and surreptitiously obtained, or where, in the nature of the particular case, or by reason of the care used in concealing them, the names of customers are so guarded as not to be easily obtainable by others than confidential employees, we are not willing to hold that, in any ordinary business, an employee, on going into business for himself or into the employ of another, should be enjoined from seeking to do business with friends he has made in the course of a previous employment, merely because he became acquainted with them while so engaged, and as a result of such previous employment."

In 1923 the supreme court of Kansas considered this subject in the case of *Garst v. Scott,* 114 Kan. 676, 220 Pac. 277, 34 A. L. R. 395, denying injunctive relief, and held, as shown by the syllabus:

"An employee who solicits business and delivers work for a laundry may, upon ceasing his employment, engage in a laundry business for himself, or become the employee of another laundryman, in competition with his former employers, and solicit business from their customers from whom he had received laundry work, where he leaves with the employers all lists of the customers, and where there is no contract prohibiting him from soliciting the patronage of such customers."

In the course of the opinion in that case the court said:

"There is a note on this subject, found in an annotation to *Fulton Grand Laundry Co. v. Johnson, supra,* in 23 A. L. R. 423, the first paragraph of which reads: 'It is held, in the majority of the cases which have passed on the question, that in the absence of an express contract, on taking a new employment in a competing business, an employee may solicit for his new employer the business of his former customers, and will not be enjoined from so doing, at the instance of his former employer."

In the case of *Progress Laundry Co. v. Hamilton,* 208 Ky. 348, 270 S. W. 834, decided in 1925, the court of appeals of Kentucky, with apparently all the cases before it, including the annotations to the Maryland case, 23 A. L. R. 420, and annotations to the Kansas case, 34 A. L. R. 395, *supra,* denied injunctive relief in a case the facts of which were very similar to the present one. Cases to the same effect from other states are cited in opinion.

The authorities above mentioned and those to which they refer cover the field to this date. An examination

of them shows that the case of *Davis & Co. v. Miller,* *supra,* is in harmony with them and was correctly decided. That case involved the use of what may be termed trade secrets within the protection of equity jurisdiction, in that the names and addresses of the clients of the concern were necessarily among its records and files and almost impossible of ascertainment from any other source. Miller's knowledge of them had been acquired while he was engaged as a most trusted and confidential employee, and, as argued by the appellant in its brief in that case, in the month of November, 1916, came the culmination of a long series of differences between John Davis and the other stockholder of the corporation, "when Miller took advantage of the opportunity and demanded that Mr. Davis give up the control he had in the company, and when Mr. Davis refused, started out in a business of his own." It was a case of being bent on mischief in the nature of a positive fraud against John Davis & Co., relief against which equity would of course give protection.

Not so in the present case, where there was no scheme, plan, fraud or oppression on the part of the respondent, who, months after concluding the employment of the appellant, took employment in an orderly fashion with another. As said in the Maryland case, for him to be compelled to give up all the friends and business acquaintances, made during his previous employment, would tend to destroy the freedom of employees and reduce them to a condition of industrial servitude. Customers are not necessarily trade secrets, nor are they property. In this case, the customers were fixed and settled in a known district, and the fact of their being patrons of the appellant was in no way covered up, but capable of ascertainment on be-

half of the respondent's new employer, or any one else, by an independent canvass at small expense and in a very limited period of time. To hold that the *Davis* case is decisive of this one would be, in our opinion, an unwarranted extension of the doctrine of that case. The complaint in this action does not state facts sufficient to entitle the appellant to equitable relief.

Affirmed.

TOLMAN, C. J., MAIN, and PARKER, JJ., concur.

MACKINTOSH, J. (dissenting)—I can not agree with this decision. Every presumption against the sufficiency of the complaint has been indulged in, when the opposite manner of treating complaints is the customary one.