[No. 2917, Jan. 8, 1927]

EXCELSIOR LAUNDRY CO. v. DIEHL et al.

[252 Pac. 991]

### SYLLABUS BY THE COURT

An employee who solicits business and delivers work for a laundry may, upon ceasing his employment, become the employee of another laundryman, in competition with his former employer, and solicit business from the customers from whom he had received laundry work, where he leaves with his former employer all lists of the customers, and where there is no contract prohibiting him from soliciting the patronage of such customers.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit by the Excelsior Laundry Company against J. O. Diehl and another for an injunction. From a judgment for plaintiff, defendants appeal. Reversed and remanded, with leave to entertain an application for a modified injunction.

E. W. Dobson, of Albuquerque, for appellants.
Marron & Wood, of Albuquerque, for appellee.

[1] 32CJ p. 161 n. 21.

OPINION OF THE COURT

BICKLEY, J. This is an appeal from a judgment granting an injunction, enjoining the defendant J. O. Diehl from soliciting or causing or procuring to be solicited the patronage or laundry work from any of the persons who were customers of the plaintiff prior to the 19th day of February, 1923, along a certain route or district, and from soliciting or requesting, directly or indirectly, or causing to be solicited or requested the customers or patrons of the plaintiff in said district to discontinue their business with the plaintiff, or to transfer their business to the defendant or any other party; and defendant Imperial Laundry Company was enjoined from using in any manner the information acquired by the defendant J. O. Diehl concerning the trade secrets of the plaintiff, or from making use of the same. The plaintiff operated a laundry in the city of Albuquerque and had employed the defendant Diehl to work a laundry route for him in that city. That had been done by soliciting customers for the plaintiff by receiving from those customers work to be done in the plaintiff's laundry, and by delivering that work after it had been done. For several years the plaintiff had prepared and kept a list of its patrons and customers, the particular kind and class of work supplied, and the day and hour of the week when it was to be called for, which list, it is claimed by the plaintiff, was a business and trade secret of the plaintiff, communicated only to such of its agents and employees as needed to use the same in connection with the business, and that this list constituted one of the important and valuable assets of the plaintiff's business; that, for the purpose of enabling the defendant Diehl to perform his duties, the plaintiff revealed and communicated to him the contents of this list so far as the list related to his district; that, from the use of the list and the performance of the duties which the plaintiff employed the defendant Diehl to render, the defendant necess-

arily had acquired knowledge of the valuable trade information and practices of the plaintiff, its customers and needs and class of work, times of collection, etc. The defendant Diehl became ill and was compelled to remain at home and was unable to perform his duties as driver and solicitor, and shortly thereafter was discharged from the service of plaintiff for reasons satisfactory to it. The defendant Diehl afterwards secured employment from the defendant Imperial Laundry Company similar to that which he had rendered to the plaintiff company. The defendant Diehl proceeded at once to visit the same customers and patrons of the plaintiff that he had served as agent and representative of the plaintiff, soliciting them to give up their patronage of the plaintiff and transfer it to himself and the defendant Imperial Laundry Company. The court found also:

"XIII. That in the course of such efforts he went to several of the patrons whom he had formerly served an hour or two in advance of the time when he had been accustomed to collect from them upon behalf of the plaintiff, asked them for their laundry and received the same without informing them of the change in his employment, or telling them that he had ceased to be employed by the plaintiff, and took and was permitted by some of such patrons to take the laundry under the impression and belief that he was still employed by the plaintiff and collecting for it."

There is no finding by the court that the defendant Diehl ever carried away with him any written list of the plaintiff's customers, and no finding that said defendant ever made any copies of any written lists of plaintiff's customers. Whatever knowledge of plaintiff's customers defendant made use of, so far as the record shows, was from memory.

Appellee states:

"This case presents but a single question, the right of the employer to equitable protection against unconscionable use by a competitor, who has employed a discharged servant of the former, of private and confidential information necessarily intrusted to the servant for the performance of his duties."

There was no contract between the plaintiff and the defendant Diehl stipulating that he should not, at the cessation of his employment by the plaintiff, engage in a similar business for himself or another.

The law is in confusion regarding the right of an employee to quit his employment and engage in business for himself, or enter the employment of another, in competition with his former employer, and solicit business from the customers of the latter where knowledge of those customers has been obtained by the employee during the course of his employment, or soliciting such customers. Appellees in their brief state that the authority on which the court below acted was the case of Empire Steam Laundry Co. v. Lozier, 165 Cal. 95, 130 P. 1180, Ann. Cas. 1914C, 628, 44 L. R. A. 1159, and the New York cases therein referred to, and also the case of Grand Union Tea Co. v. Dodds, 164 Mich. 50, 128 N. W. 1090, 31 L. R. A. (N. S.) 260. We think the Grand Union Tea Company Case is distinguishable from the case at bar. In that case the employee was inhibited by injunction from using the list of customers which had been given to the employee or using a copy surreptitiously obtained by the employee for the benefit of a competitor, and required the employee to furnish the employer with the lists which he had withheld upon the discontinuance of his employment. Mr. Justice Hooker, who wrote the opinion in that case, said:

"We are of the opinion, however, that he cannot be restrained from selling his commodities for himself or for any employer, in any part of the city, or to any person, so long as he does not use any property belonging to the complainant, or copies thereof that were surreptitiously made."

The facts of the Grand Union Tea Company Case are summarized in Ice Delivery Co. of Spokane v. Davis, 137 Wash. 649, 243 P. 842, as follows:

"It was a case wherein the driver of a delivery wagon used cards or order blanks and obtained orders for cash sales of goods to be delivered a week later. The names

and addresses of the purchasers were written on the cards. For some months the driver contemplated a change of employment, and some days before ceasing work for the plaintiff, he agreed with his new employer to bring the former patrons to his route with him, and agreed to continue to solicit them thereafter. During the last week, he told the customers of his plan, and obtained their patronage for his new employer. He immediately commenced work for the new employer and before turning over his cards to his old employer, on leaving him, he erased all names of customers from the cards and cancelled others by not putting them on the cards. He continued thereafter to work on the same route and solicit for his new employer."

It cannot be denied, however, that the case of Empire Steam Laundry Co. v. Lozier, supra, and subsequent cases from the same court following that one seem to hold, under the same or similar facts here involved, that the employee may be enjoined as herein attempted. The holding of the California court, however, seems to be the minority holding. It seems to be well settled that, independent of contract, an employer may maintain a bill of equity to restrain an employee from practicing or divulging to others trade secrets, knowledge of which was acquired by him through his employment. It is also said that while equity should lend its aid to the fullest extent to protect the property rights of employers, whether existing in the form of trade secrets or otherwise, consideration of public policy and justice demands that such protection should not be carried to the extent of restricting the earning capacity of individuals on the one side, while tending to create or foster monoplies of industry on the other. And, as was said in E. I. Du Pont, etc., v. Masland (D. C.) 216 F. 271:

"The line which terminates the limits where the rights of the plaintiffs end and those of the defendants begin is a difficult one to draw. The iniquity of an employee who takes away with him the property of his employer, existing in the form of valuable processes, is as clear as if he asported any other form of property. The right of the employee to use his abilities, developed through his experiences, to the utmost of his capacity, is equally clear. This right of the employee and his obligation to preserve to the full the property of the employer are shaded into each

other by lines so fine that it is doubtful whether anything but a nice sense of honor can keep them distinguished."

Some of the cases from those jurisdictions which do not agree with the California courts make a distinction between the carrying away and use by an employee of lists of customers and the use by him of knowledge which he has obtained and which he carried away with him solely in his memory.      In Peerless Pattern Co. v. Pictorial Review Co., 147 App. Div. 715, 132 N. Y. S. 37, injunctive relief restraining the manager of a rival firm from soliciting or filling orders from plaintiff's customers was expressly denied, and the court remarked:

"All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old.   This, if it involves no breach of confidence, is not unlawful, for equity has no power to compel a man who changes employers to wipe clean the slate  of  his memory."

Without undertaking 'to analyze or classify the numerous cases which have dealt with the subject of injunctive relief against the disclosure of trade secrets and the like, we call attention to the case of Progress Laundry Co. v. Hamilton, 208 Ky. 348, 270 S. W. 834, decided in 1925.   The court said that the mere knowledge of a list of customers which is common and is essential and necessary to the prosecution of any business would not necessarily be the product of any kind of special ingenuity, but that it is acquired because of other facts common to all commercial activities and trades, and without which none of them would succeed.   The court continued:

"Moreover, to hold that a list of customers, obtained in the manner as did defendant in this case, could not be solicited by him (although his efforts may have largely assisted in contributing to the number) when subsequently engaged in a rival competing business is, according to our opinion, directly antagonistic to another cherished principle of the law; i. e., that competition should not   be stifled but be free and untrammeled.   If defendant herein could be enjoined from soliciting his former customers on route No. 4 in the prosecution of the same business for his new employer, then a traveling salesman, who is ordinarily called a 'drummer,' for a particular business within

a larger territory limited only by state lines, or even to
a greater extent, could not engage in business thereafter
for another or others conducting a like business within
that territory by selling to his former customers. The in-
evitable result of which would be that a salesman would
be forever barred from selling to a customer whose acquain-
tance he formed during his first employment. If he
should succeed in creating a new list in the same terri-
tory, for a subsequent employer, and for any cause that
employment should be terminated and a similar one
accepted from another rival competitor of the two he
would then be barred from soliciting sales from either
list of customers, and he would eventually be forced to
entirely abandon that territory and seek other fields of
labor, for which, in the meantime, he had become especi-
ally equipped."

The court then remarked that many of the cases
cited by counsel involved undisputed trade secrets
within that definition; in others, there was an ex-
press contract by the employee that he would not
appropriate such information either for himself or
another, upon retiring from the employment; while
in still others, the thing attempted to be appropria-
ted was a copied list of the customers made and
taken from the employer's books, which evidently
was his property, and so far as the court was able
to discover, only two of the cases relied upon by
counsel measured squarely up to the facts of the
case, and held that an acquired list from the mem-
ory of customers by an employee was the acquisition
of a trade secret belonging to his employer, and that
the former may not solicit their patronage either
for himself or while serving another engaged in a
similar business. One of those cases, the court said,
is Empire Steam Laundry Co. v. Lozier, supra. The
court continued:

"On the contrary the Supreme Courts of the states of
Georgia, Maryland, Minnesota, and Kansas, before which
the exact question was presented, hold to the contrary
[citing cases.]"

To which may be added now Washington.    See
Ice Delivery Co. v. Davis, supra.

In the recent case of Garst, et al. v. Scott, 114

Kan. 676, 220 P. 277, 34 A. L. R. 395, the court decided:

"An employee who solicits business and delivers work for a laundry, may upon ceasing his employment, engage in a laundry business for himself or become the employee of another laundryman, in competition with his former employers, and solicit business from their customers from whom he had received laundry work where he leaves with the employers all lists of the customers, and where there is no contract prohibiting him from soliciting the patronage of such customers."

The court quoted from Empire Steam Laundry v. Lozier, supra, but declined to follow the doctrine therein announced, but adopted the doctrine laid down in Fulton Grand Laundry Co. v. Johnson, 140 Md. 359, 117 A. 753, 23 A. L. R. 420, quoting from the syllabus of that case as follows:

"The list of customers on a 'laundry route,' being obtainable by a rival concern merely by observation, is not a trade secret, to be protected as such by a court of equity.

"An employee in an ordinary business, on going into business for himself or into the employ of another, should not be enjoined from seeking to do business with friends made by him in the course of a previous employment, merely because he became acquainted with them while so engaged and as a result of such previous employment.

"An employer may expressly contract with his employee that the latter shall not, on leaving the employer's service, solicit business in the same line from the customers of the employer in a particular territory."

The court further quoted from the note found in an annotation to Fulton Grand Laundry Co. v. Johnson, in 23 A. L. R. 423, as follows:

"It is held in the majority of the cases which have passed on the question, that in the absence of an express contract, on taking a new employment in a competing business, an employee may solicit for his new employer the business of his former customers, and will not be enjoined from so doing, at the instance of his former employer."

A lengthy discussion of all the decisions will not add to what has been said in the language last above quoted. Since the publication of the Johnson Case as reported in 23 A. L. R., the Kansas court handed

down the opinion in the case of Garst v. Scott, supra, which was also published in 34 A. L. R. 395, and the annotations to that case again say:

"The cases hold that, in the absence of express contract provision, a former employee may not be enjoined from merely soliciting or accepting business from the customers of his former employer."

The court, in Garst v. Scott, supra, said:

"A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer, and cannot be taken or used by the employee for his own benefit, but customers are not trade secrets. They are not property. The right to trade with them may be property, but that right was not interfered with by the defendant. Written lists of customers may be propery, but the defendant did not take any such list. Skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. All that knowledge, skill, and information, except trade secrets, become a part of his equipment for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge, information, or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them."

In the very late case of Ice Delivery Co. of Spokane v. Davis, supra, decided March 4, 1926, considering facts similar to those in the case at bar, the court reviewed the Grand Union Tea Company Case and many other cases, and decided that a bill to enjoin a former employer of plaintiff, Ice Company, from soliciting customers with whom he had become acquainted on the former route and delivering ice to them in behalf of plaintiff's competitor was properly dismissed for want of equity; there being no evidence of any scheme, plan, fraud, or oppression on part of defendant.

We are in accord with the majority holding as heretofore outlined.

If the injunction had been limited so as to restrain

the practices described in the thirteenth finding heretofore quoted, we probably would find no fault with it. The injunction, however, is very broad and is not limited to restraining the defendant from doing the things described in said finding XIII. It follows from the foregoing that the judgment of the trial court must be reversed and the cause remanded, with leave for the district court to entertain an application for a modified injunction in accord with the principles herein set forth, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.