American Cleaners and Dyers, Appellee, v. Charley Foreman et al., Appellants.

Gen. No. 33,087.

Opinion filed March 11, 1929.

Austin L. Wyman, for appellants.

ALBERT FINK, CHARLES J. SOPKIN and EDWARD S. SCHNEIDER, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendants seek to reverse a decree of the circuit court of Cook county which enjoined them "from directly or indirectly, for themselves or any other firm or corporation, call on, solicit, canvass, serve, divert, take away or from attempting to call on, solicit, canvass, divert, serve or take orders for cleaning and dyeing or either cleaning or dyeing of and from the following customers of the complainant, American Cleaners and Dyers, a corporation." Then follows a list of names and addresses.

The record discloses that complainant is a corporation engaged in the cleaning and dyeing business and that defendants Charley Foreman and Joe Switkin had been in its employ for a number of years. Each had a route and their business was to call on each of complainant's customers, collect garments that were to be cleaned and dyed and after complainant had cleaned or dyed the garments the drivers would return them to their customers. The customers are designated in the record as retail dealers or small shopkeepers who receive the garments that are to be cleaned and dyed from the owners and send them to the complainant to have the work done. Each of the two drivers had from 40 to 50 customers.

The evidence further shows that when Foreman and Switkin were employed by complainant, complainant assigned to each a route and gave to each of them the names of some customers and furnished each of them with an automobile to go out and bring garments from customers and to return them after they were cleaned. It further appears that a part of their duties was to solicit new customers, and the evidence shows that from time to time new customers were obtained; that

at the time they were employed by complainant they were paid a salary of $40 a week. It was afterwards raised to $75 and the greater part of the time they were employed they received $85 a week. On Saturday, January 21, 1928, Foreman and Switkin left complainant's employ and the following Monday began to work for the defendant, Central Cleaners and Dyers, a corporation. At that time each of them had been bringing in business to complainant which amounted to approximately $50,000 a year.

The evidence further shows that complainant and others engaged in like business in Chicago belonged to an organization known as the Chicago Master Cleaners and Dyers Association and had entered into a written agreement with the Laundry and Dye House Drivers and Chauffeurs Union, Local 721, of which union Foreman and Switkin were members. The contract contained the provisions usually found in agreements entered into between employers and unions. Among other things it was provided that an employer would enter into no agreement with its employees that would in any way conflict with the agreement made between the union and the Master Cleaners except that the employer might enter into an agreement with its employee that the latter should refrain from soliciting any of the patrons or customers of the employer from whom the employee received goods for cleaning or dyeing for a period of not more than one year after the employment ceased. Another provision of the agreement fixed the salary to be paid drivers at $35 a week plus certain commissions.

Shortly before Foreman and Switkin left complainant's employ, there is some evidence tending to show that complainant told them he would pay them only the union scale of wages, which was considerably less than the $85 a week which each had been receiving, and that they objected to this reduction.

The evidence also shows that about this time Ben H. Kornick got in touch with Foreman and Switkin and arranged for the incorporation of defendant, Central Cleaners and Dyers, and each of them subscribed for one share of stock. The capital stock was $60,000 divided into 600 shares. Kornick subscribed for 596 shares and was elected president, Switkin vice-president and treasurer, and Foreman secretary. They were also directors of the company. As stated, Foreman and Switkin, on the Monday following the time they left complainant's employ, went out on their respective routes soliciting their old customers on behalf of the defendant, Central Cleaners and Dyers, and about a month thereafter Switkin had induced 39 of his 43 old customers to give their work to the new company and Foreman had secured at least 10 of his old customers to do likewise.

There is substantially no dispute as to the facts above stated. The master, to whom the case was referred, after taking the evidence made up his report and found that the names and addresses of complainant's customers who had been served by Switkin and Foreman "were trade secrets of the complainant," having been obtained by them while they were in the employ of complainant at a very large expense to complainant.

The master further found that the written contract entered into between the union and the Master Cleaners and Dyers above mentioned was of no effect in the instant case because complainant and Foreman and Switkin never worked under it; that neither of them made any agreement with complainant that they would not solicit complainant's customers after they left its employ and that the solicitation by Switkin and Foreman of their old customers "was and is unequitable and unjust and is unfair trade and dealings," and that they should be enjoined for one year. The report was

approved and a decree entered in accordance with the master's findings and recommendations.

An examination of the authorities discloses that there is great conflict of opinion and decision as to whether an employee, in the absence of an express agreement not to do so for a reasonable period of time after he ceases his employment, may solicit for his new employer his old customers obtained by him while engaged in his former employment.

All of the authorities seem to agree that if the employee under such circumstances surreptitiously copies the names and addresses of his employer's customers while he is employed, and takes such lists with him, he will be enjoined from soliciting the customers for his new employer. The decisions also hold that an employee will be enjoined where, in his new employment, he solicits his old customers, leading them to believe that he is still working for his former employer. So also all agree that the employee in his new position must act in good faith when he solicits his old customers. But there is great disagreement as to whether he may solicit them at all.

Upon careful consideration we are of the opinion that the great weight of authority and the better reason is that in the absence of an express contract, equity will not enjoin an employee after the termination of his employment from soliciting business from the customers of his former employer.

In 32 Corpus Juris, pp. 160–161, it is stated that the names of customers of a business concern whose patronage has been secured by business effort and the expenditure of time and money, should be deemed sacred and entitled to protection, although there are authorities directly to the contrary. Continuing, it is said:

"It has been held that an employee who, without the employer's knowledge or consent, copies a list of the employer's customers or patrons, or who, on the termination of his employment, carries away records or

documents containing trade secrets or other confidential matters relating to the employer's business, will be enjoined from using such lists in a similar business for the purpose of taking away business from his former employer for himself or others. It has also been held that an employee who has been furnished a list of customers by the employer for the purpose of soliciting trade will be enjoined, irrespective of contract not to use confidential knowledge gained in the course of his employment except in the furtherance of the employer's interests, from using such list in securing the patronage of such customers for another employer. . . . On the other hand, in the absence of express contract, equity will not enjoin an agent or servant, after termination of his employment, from soliciting business from the customers or patrons of his former principal or employer, where by so doing no business secret or trust which has been reposed in him because of his relation as agent or servant is violated: . . . that one who has employed him is likewise not liable to be enjoined from using his knowledge of the former employer's customers acquired by the employee while in the former employment where no breach of confidence is involved.''

In *Peerless Pattern Co. v. Pictorial Review Co.*, 132 N. Y. Supp. 37, in discussing the question now under consideration it was said (p. 39):

''All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old. This, if it involves no breach of confidence, is not unlawful; for equity has no power to compel a man who changes employers to wipe clean the slate of his memory.''

And in *Boosing v. Dorman*, 133 N. Y. Supp. 910, the court said (p. 911):

''Secret processes of manufacture confided to an employe in the course of his employment have been protected from disclosure or use by the employe, either

for the benefit of himself or another after his employment had terminated. Even in the absence of an express contract, this is a property right for which the master is entitled to protection. . . . I cannot see, however, that the information acquired by the defendant Dorman in serving the plaintiff's customers can be properly classified as a trade secret.''

In *New York Towel Supply Co., Inc. v. Lally,* 162 N. Y. Supp. 247, it was held that the towel company was not entitled to an injunction enjoining its former employee from soliciting its customers whom the employee had served while he was working for the towel company. It is there said (p. 248):

''The plaintiff is engaged in the business of supplying towels, aprons, and soap to offices, . . . It seeks to enjoin two former employes from soliciting for themselves the custom of those whom they served while employed by the plaintiff.

''The business is, and was before plaintiff engaged in it, open, common, and essentially simple. . . . The logic of the right of action which plaintiff asserts, when carried out, is rather startling. If sustained, its extension is warranted to every sort and variety of trade, profession or employment. It will end forever, for youth, the ambition of competing with the employer for the old trade by fair means and hopeful energy. If the principle contended for be rigidly and uniformly applied, the preposterous legal result would follow that a 'prentice hand' having mastered his business or profession, may only use his energies to the full in some other occupation or in some other place.

''The plaintiff does not rest its claim upon any merit of invention or secret process brought into the business. Its old trade is entirely the result of personal solicitation, as defendants' trade must necessarily be. The plaintiff did not in advance require its employes to covenant not to enter into competition on leaving

the employ; this could have been done, and probably would be enforceable. . . . Instead, it is asserted that the competition of the former employes is an unfair competition, because it involves the use of knowledge of plaintiff's customers acquired while the employment lasted.''

To the same effect is *Sachter's Ice Cream Co. v. Sunshine Ice Cream Co., Inc.,* 190 N. Y. Supp. 391, where it was held that a dealer may not enjoin its former employee, and rival dealer from soliciting its customers. There, one who was employed as a driver, salesman and solicitor of an ice cream wagon, was discharged and was employed by defendant, a business rival. He solicited his former employer's customers, and it was held that equity would not enjoin him from continuing to do so. The court there said (p. 392): ''Plaintiff asks in effect that the defendant, an ordinary solicitor in an ordinary business, may work up a list of customers, and then, having been discharged, with or without cause, may never again approach such customers in the interest of himself or of any other employer.'' The injunction was refused.

The case of *Goldberg v. Goldberg,* 200 N. Y. Supp. 3, is almost in point on the facts. The court there held that, in the absence of fraud or an express agreement not to go into business or to solicit the employer's customers, a tailor and cleaner, whose business it was to deliver and solicit trade, has a right on leaving his employment to try to build up his own business by direct solicitation of the former employer's customers, there being nothing secret in getting up a list of tailors. That case was heard by five judges of the Appellate Division of the Supreme Court of New York and the opinion and the decision were unanimous. The court there, after distinguishing some authorities, said (p. 6): ''There is nothing secret about getting up a list of men and women who are in the tailoring business in Brook-

lyn. A casual reference to a business directory will give the whole list. Undoubtedly the plaintiff, through her drivers, solicited trade from a list of tailors, and undoubtedly the solicitation was the means of procuring the business.'' The court then distinguishes cases where an injunction was warranted where the former employee was soliciting the former employer's customer's by fraudulent and unfair means; and continuing the court said: ''In the absence of fraud, or in the absence of an express provision in the contract of employment not to go into business or to solicit the former customers of the employer, the employee has a right to embark on his own enterprise and to try to build up his own business by direct solicitation of his former master's customers and others,'' and further, that the Court of Appeals of that State, in 210 N. Y. 529, had affirmed the doctrine just stated.

In the case of *Newark Cleaning & Dye Works v. Gross,* 97 N. J. Eq. 406 (128 Atl. 789), it was held that the solicitor for a dyer and cleaner, upon leaving his employment, had the right to build up a competing business by soliciting his former employer's customers. The court said (pp. 406, 407):

''The complainant's customers are all well known in the trade; they are classified and listed in the telephone and city directories, and while it may not be known generally who does their work, it is easily ascertainable. They are an open market and fair field for all in the complainant's line who seek them. The defendant left his list behind when he quit. He has no need for it for he knows the customers by heart—any other solicitor would know them by the display signs of their business. The fact that he knows they deal with the complainant, while others know only that some one does their work, is not a trade secret, sacred to his former employer, not to be invaded now that he has launched in business for himself. If it were, there would be fewer merchants.''

In *Progress Laundry Co. v. Hamilton,* 208 Ky. 348 (270 S. W. 834), it was held that a strictly "trade secret" would be protected in the hands of the owner by injunction, that this is the universally accepted rule, and that there are no authorities to the contrary. In that case a former employee of a laundry, who solicited its customers, was soliciting them for a rival laundry company, and it was held that he had a right to do so. In passing on the question whether the information the employee had received while working for his former employer was a "trade secret," the court said (p. 349):

"Strangely enough, as it appears to us, some of the American courts have so adjudged, while a larger number, according to our opinion, correctly hold to the contrary. The text in 22 Cyc. 842, in an effort to concretely define the term 'trade secret,' says: 'A trade secret is a plan or process, tool, mechanism or compound, known only to its owner and those of his employees to whom it is necessary to confide it. . . . A process commonly known to the trade is not a trade secret and will not be protected by injunction.' That definition meets with our approval . . . to hold that a list of customers, obtained in the manner as did defendant in this case, could not be solicited by him . . . when subsequently engaged in a rival competing business is, according to our opinion, directly antagonistic to another cherished principle of law, i. e., that competition should not be stifled, but be free and untrammeled. If defendant . . . could be enjoined from soliciting his former customers . . . in the prosecution of the same business for his new employer, then a traveling salesman, who is ordinarily called a 'drummer,' for a particular business . . . could not engage in business thereafter for another . . . conducting a like business . . . by selling to his former customers. The inevitable result of which would be that a salesman would be forever barred from selling

to a customer whose acquaintance he formed during his first employment.''

And the Supreme Court of Arkansas in *El Dorado Laundry Co. v. Ford,* 174 Ark. 104 (294 S. W. 393), rendered an opinion to the same effect. It was there held the names of customers of a laundry learned by a former employee did not constitute a trade secret, and that the former employee would not be enjoined from soliciting the patronage of the former customers for a rival laundry.

So also was the holding of the Supreme Court of Washington in *City Ice & Cold Storage Co. v. Kinnee,* 140 Wash. 381 (249 Pac. 782). The court there said that an ice company was not entitled to an injunction to prevent its former employee from soliciting its customers on their old routes to buy ice from them on the theory that the knowledge they had gained from the company's customers was confidential or a trade secret. This same rule was announced in *Kansas City Laundry Service Co. v. Jeserich,* 213 Mo. App. 71 (247 S. W. 447). In *Lewitter v. Adler* (N. J. Eq.), 137 Atl. 541, it was held that a former employee, a window washer, who engages in business for himself would not be restrained from soliciting his former employer's customers in the absence of a covenant to refrain from doing so, where he was guilty of no imposition or fraud. The same rule was announced by the Supreme Court of New Mexico in *Excelsior Laundry Co. v. Diehl,* 252 Pac. 991, where a great many authorities on this question are discussed. And in *Federal Laundry Co. v. Zimmerman,* 218 Mich. 211, it was held that equity would not restrain the driver of a laundry wagon, who had been working on a certain route and who had severed his relations with his former employer, from soliciting the former employer's customers for a competitor by whom he was then employed. And the Supreme Court of Maryland in *Fulton Grand Laundry Co. v. Johnson,*

140 Md. 359, a case often cited with approval, held that a list of customers of a laundry was not a trade secret to be protected by a court of equity. The court there said (p. 361): ''The decisions in this country and in England seem to be fairly harmonious in principle as to the duty of courts to protect owners of trade secrets from disclosure by employees, but the divergences begin when the question to be determined in particular cases is whether the thing sought to be protected should be classed as a trade secret. . . . A thing can hardly be said to be a secret, in the sense that it should be guarded by a court of equity, which is susceptible of discovery by observation, and which is open to the observation of any one who thinks it worth while to observe.'' The court then refers to *Empire Steam Laundry Co. v. Lozier,* 165 Cal. 95, and to an English case and two reported in the N. Y. Supp., which hold to the contrary, and continuing said (p. 362):

''But, while we do not decide that there might not be cases in which an employer should be protected from the use by an employee of a list of customers, fraudulently and surreptitiously obtained, or where, in the nature of the particular case, or by reason of the care used in concealing them, the names of customers are so guarded as not to be easily obtainable by others than confidential employees, we are not willing to hold that in any ordinary business an employee, on going into business for himself or into the employ of another, should be enjoined from seeking to do business with friends he has made in the course of a previous employment, merely because he became acquainted with them while so engaged. . . . Under such a rule, a traveling salesman, every time he changed employers, if in a like business, would be compelled to give up all the friends and business acquaintances made during the previous employment. Such a rule would tend to destroy the freedom of employees and to reduce them to a condition of industrial servitude.''

The Supreme Court of Kansas, in the case of *Garst v. Scott,* 114 Kan. 676, held that an injunction would not lie to restrain a former employee from soliciting business for himself from customers of his former employer.

A contrary rule has been announced in *Empire Steam Laundry Co. v. Lozier, supra,* where it was held that former drivers of a laundry will be *perpetually* enjoined from soliciting its customers for a rival concern. The question, so far as we are advised, has not been decided by the courts of review of this State. Counsel for complainant, however, cited the cases of *Loven v. People,* 158 Ill. 159, and *Boylston Coal Co. v. Rautenbush,* 237 Ill. App. 550; but we think neither of them is in point. The *Loven* case was a proceeding whereby it was sought to have Loven adjudged in contempt of court for violating an injunction whereby Loven, a former employee of a medicine company, was enjoined from continuing to correspond with and solicit the medicine company's former customers. He apparently did not seek to have the injunction set aside but when he was brought up for contempt for violating the injunction, sought to show that the writ in its terms was too broad and unwarranted, but the court held that the injunction must be obeyed until it was set aside; so the question now before us was not presented in that case.

The *Boylston Coal Company* case involved the use of a large mail order list of customers of the complainant, who was engaged in the sale of coal by means of the mail. When one of its employees left he surreptitiously took with him a long printed list of the customers; it was held that he had no right to do so and he was enjoined. No brief on behalf of the defendant was filed in that case. Obviously the case is not in point.

Upon a consideration of the authorities we are of the opinion that the great weight of authority and the better reason supports the view that, in the absence of an

express contract, equity will not enjoin a former employee from soliciting the employer's customers whom he served during his employment where, as here, no list of names was taken by Foreman and Switkin when they left complainant's employ and no fraud was committed by them. Under the circumstances disclosed by the evidence in the instant case, the names and addresses of complainant's customers were not trade secrets within the meaning of the law. And as stated by the Supreme Court of Maryland, to enjoin them under the facts disclosed would tend to destroy their freedom ''and to reduce them to a condition of industrial servitude.''

For the reasons stated the decree of the circuit court of Cook county, being contrary to law, is reversed and the cause is remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*

McSURELY and MATCHETT, JJ., concur.