MID–STATES ENTERPRISES, INCORPORATED, a Corporation, Appellant,

v.

W. C. HOUSE and Electronic Controls, Inc., a corporation, Appellees.

Court of Appeals of Kentucky.

May 20, 1966.

William E. Sherwood, Gladney Harville, Stoll, Keenon & Park, Lexington, for appellant.

J. Montjoy Trimble, Harry B. Miller, Miller, Griffin & Marks, Lexington, Gordon Daisley, Cameron, Kerkam & Sutton, Washington, D. C., for appellees.

CLAY, Commissioner.

This is a suit to enjoin the individual and corporate defendants, appellees, from manufacturing, using, selling or leasing electric race track timing equipment which incorporates the plaintiff's alleged "trade secrets". The case was tried without a jury, and the circuit court denied plaintiff appellant relief.

Plaintiff conducts a business of leasing electronic devices to trotting tracks for the timing of harness racing. In 1952, it had perfected a device which apparently was superior to those formerly used. In that year it employed defendant House and he stayed in plaintiff's employment for approximately 10 years. During that time he participated in the construction and wiring of assemblies that comprised the timer, and he also helped install and operate them. During the course of his employment he allegedly acquired intimate knowledge of what plaintiff claims to be two "trade secrets".

Upon leaving plaintiff's employment, House joined the corporate defendant (hereafter called Electronic), which is in a competing business. Electronic engaged a third party to construct timers for it, and plaintiff claims that the competing timer contained features such as those handled by it. The theory of plaintiff's case seems to be that House acquired confidential in-

formation which he imparted to the party who was manufacturing timers for Electronic, and this was some sort of breach of trust which gave plaintiff a right to eliminate this particular competition.

At this point it may be noted that after House had left his employment with the plaintiff he allegedly executed a written agreement in which he promised not to disclose secret or confidential information obtained by him. There is a sharp issue as to whether House signed this agreement. Without resolving that issue, the trial court disregarded the contract for lack of consideration and because it was so unlimited in scope as to be against public policy. Clearly the trial court correctly disposed of this writing. It is plaintiff's contention, however, that there is some sort of *implied* agreement and that House breached some sort of trust.

As the trial court found, the plaintiff's case bogs down from beginning to end. In the first place, the two features of plaintiff's timing device which it claims constitute "trade secrets" do not appear to be such at all. A trade secret is a novel and unique plan or process, tool, mechanism, or compound, known only to its owner and his employees, which has been perfected and appropriated by the exercise of individual ingenuity. See Progress Laundry Co. v. Hamilton, 208 Ky. 348, 270 S.W. 834. Equity will in the proper case protect the possessor from *unfair* exploitation, although the nature of the right protected is difficult to grasp. It is certainly something less than a patent right. Running through many cases we have examined is the element of *fraudulent* appropriation.

The first thing plaintiff must have proved is that the two features in its timer were actually "trade secrets". It is difficult to see how they could be secrets when they consisted of component parts of a device which almost anyone could examine. House testified that he had not been told these were secrets and there was other evidence there was nothing confidential about them. The prints of the timer's design were apparently available to many persons.

In the second place, there could be no novelty or uniqueness about the components of a device if they are known to others. There was ample evidence that the two features which plaintiff claims to be secrets were relatively well-known principles in the electronics field. While the application of these principles to a timer for harness racing may have been new and unique when first adopted by plaintiff, they lost their secret character by reason of general developments in the trade.

Thirdly, even assuming these were "trade secrets", plaintiff failed to establish that House had appropriated them at all, much less fraudulently or in breach of faith. House himself testified that he did not have a working knowledge of the mechanisms involved (which were quite intricate and technical), and he also testified that he did not advise the competing designer about how to incorporate these features.

Finally, there was substantial evidence that plaintiff's and defendants' timers were not the same thing. While they both incorporated similar engineering principles, it cannot be said that defendants were using plaintiff's "secrets", if they were secrets.

We conclude there was ample evidence to support the findings of the circuit court that: plaintiff did not possess what properly might be termed "trade secrets"; House had not appropriated them; and neither House nor Electronic was using them. Further discussion of points raised is unnecessary.

The judgment is affirmed.