ROBERT SMOLCZYK ET AL., PLAINTIFFS IN ERROR, V. GAYLE GASTON ET AL., DEFENDANTS IN ERROR.

24 N. W. 2d 862

FILED NOVEMBER 12, 1946. No. 32125.

*Zelma D. Derry* and *George B. Dent, Jr.*, for plaintiffs in error.

*Halligan, McIntosh & Feltz*, for defendants in error.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAP-PELL, and WENKE, JJ., and POLLOCK, District Judge.

CARTER, J.

This is a proceeding brought against the plaintiffs in error, charging them with willful contempt for violating an order of injunction which enjoined them from operating a dance hall in a residential district of the city of Ogallala. The trial court found the defendants guilty, and imposed a sentence of 60 days in jail upon plaintiff in error, Robert Smolczyk, and a fine of $100 on plaintiff in error, Bernadette Smolczyk. Error proceedings were instituted to obtain a review of the case in this court.

On May 18, 1943, the district court entered an order enjoining plaintiffs in error from operating the dance hall in question in language as follows: "It is therefore ordered, adjudged and decreed by the court that the said dance hall operated by said defendants as alleged in said petition is a nuisance and is hereby enjoined. That said defendants, their agents, servants or employees are hereby enjoined from the operation of public dances, and from operating or allowing the same to be operated, for any amusement calculated to induce or reasonably apt to induce the gathering of a large crowd upon the premises of said defendants upon which said dance hall is located. That the operation of a public dance hall or amusement for public gatherings is hereby enjoined."

The foregoing order was superseded and the dance hall operated until the order became final three months later through failure of the defendants to complete their appeal. For a period of approximately seven months thereafter no use was made of the premises. Thereafter plaintiffs in error undertook to lease the building for private parties described generally as dancing parties, banquets and gatherings of a similar nature. They devised a statement for the lessee of the building to sign, the substance of which was: "We the undersigned hereby agree to sponsor a private dance, by invitation only, at Crystal Pavilion on (date)." The attendance of each party was limited to 35 couples,

although a number in excess of that attended on two or three occasions. A sign was placed in the hall which purported to advise all that: "This is a 'Private' dance. Only invited guests allowed." As many as ten dances were held in a month under this plan of operation. One or both plaintiffs in error were present at each dance to operate the juke box and supervise the use of the building. The evidence shows that although there were many sponsors for the dances, a large number of those attending came regularly to all the sponsored dances. It is also shown that conditions in and around the premises were quite similar to conditions existing before the injunctive order was issued, except that fewer cars and patrons were present. The honking of horns, starting of motors and noises usual to gatherings of this kind were present, although to a lesser degree than previous to the issuance of the injunction.

On March 16, 1946, a complaint for contempt was filed, charging the violation of the injunctive order. After a trial the district court found in substance that the injunctive order enjoined the use of the premises as a dance hall and that defendants knowingly and willfully operated said premises as a dance hall in the manner charged. The court further found that the method of operation of the dance hall since the entry of the injunctive order was a subterfuge to avoid the effect of the decree. The court thereupon imposed the penalties from which the present error proceedings were taken.

It is the contention of plaintiffs in error that the injunctive order restrained the use of the premises as a public dance hall only and that its use as a private dance hall was in no manner affected. With this we cannot agree. The trial court adjudged that the dance hall was a nuisance and that it should be enjoined as such. While it is true that the order contained a further provision: "That said defendants, their agents, servants or employees are hereby enjoined from the operation of public dances, and from operating or allowing the same to be operated, for any amusement calculated to induce or reasonably apt to induce the gather-

ing of a large crowd upon the premises of said defendants upon which said dance hall is located," it was clearly explanatory of the finding that the premises constituted a nuisance and should be enjoined as such. The wording indicates no intent on the part of the court to in any manner limit the finding that the premises constituted a nuisance and that the injunction was directed at the abatement of the nuisance. For seven months plaintiffs in error gave similar effect to the order. It then appears that plaintiffs in error for the first time interpreted the injunction in such a manner as to exclude private parties and banquets if they did not reach such proportions as to be called a "large crowd." Plaintiffs in error then arbitrarily determined that a group of 35 couples or less was not a "large crowd" as that term was used in the injunctive order. The routine of requiring a sponsor to sign a purported lease of the premises, for the purpose of sponsoring a private dance by invitation only, could not have the effect of changing the nature of the gathering. Nor could the placing of signs declaring that a private dance was in progress have the effect of changing its true nature. In fact, the meticulous care employed to name the gathering a private dance tends to sustain the finding of the trial court that it was a subterfuge to escape the restraining provisions of the injunction order. But, whether it was or not, the injunction order was violated when the alleged private dances were held. Plaintiffs in error will not be permitted to place their own interpretation upon the plain language of the injunction and then operate under a plan meeting the requirements of their interpretation with impunity. The care with which the plan was devised and carried out indicates a full knowledge of all the facts and a premeditated attempt to circumvent the plain meaning of the court's order.

There is evidence in the record of a newspaper account interpreting the meaning of the injunction order as being similar to that alleged by plaintiffs in error. Plaintiffs in error had attorneys employed, and, assuming the possibility that plaintiffs in error did not know where the power to in-

terpret an injunctive order lay, their counsel certainly knew that it was in the courts and not the public press.

Plaintiffs in error also testify that they sought the advice of legal counsel and that they were advised that the holding of private dances was not restrained by the injunction order. Such evidence, if found to be true, bears only on the question whether there was a willful disobedience of the injunction. Whipple v. Nelson, 138 Neb. 514, 293 N. W. 382. But in the present case the evidence sustains the finding of a willful violation of the injunction beyond a reasonable doubt. That the course pursued was on the advice of counsel cannot under such circumstances constitute a defense.

With reference to the contention of Bernadette Smolczyk that the fine of $100 and costs assessed against her was excessive, we find that such contention is without merit. As to the claim of Robert Smolczyk that a sentence of 60 days in jail at hard labor and for the payment of the costs is excessive and irregular, an entirely different question is posed.

The Constitution of this state provides: "There shall be neither slavery nor involuntary servitude in this state, otherwise than for punishment of crime, whereof the party shall have been duly convicted." Constitution, art. I, sec. 2.

Under the holdings of this court contempt is not a crime, although in the nature of a criminal proceeding. Butterfield v. State, 144 Neb. 388, 13 N. W. 2d 572. Imprisonment is not servitude, but labor enforced as a punishment is involuntary servitude. Flannagan v. Jepson, 177 Iowa 393, 158 N. W. 641. In State v. West, 42 Minn. 147, 43 N. W. 845, it is said: "There is nothing better settled than that enforced labor is 'involuntary servitude' within the meaning of such constitutional provision." And in Ex parte Wilson, 114 U. S. 417, 5 S. Ct. 935, 29 L. Ed. 89, it is stated: "Imprisonment at hard labor, compulsory and unpaid, is, in the strongest sense of the words, 'involuntary servitude for crime,' * * *."

The definition of involuntary servitude being thus established, it follows that the sentence imposing a jail term at hard labor for contempt of court is invalid as being in

violation of the cited constitutional provision. We therefore modify the sentence of the trial court by eliminating therefrom the words "at hard labor" contained therein.

It is urged that the jail sentence imposed is excessive. Generally speaking, contempt proceedings provide a method for enforcing the maintenance of order and decorum in court proceedings, the enforcement of its writs and orders, and the punishment of acts done out of court tending to obstruct the administration of justice. The trial court had the parties before him and had a better opportunity to judge the degree of willfulness and contumaciousness of the contempt than does this court. An examination of the record reveals ample evidence to sustain the action of the trial court. Unless an abuse of discretion is evident, offenses against the authority and dignity of a court must be left largely to the judgment of the court against which the offense was directed. Unless such a rule be followed, trial courts will be greatly handicapped in protecting the authority and dignity of the courts and in maintaining a public attitude of general obedience to law as announced by judicial pronouncement.

Except for the one modification hereinbefore noted, the judgment of the trial court is affirmed.

AFFIRMED AS MODIFIED.