[No. 31909. Department One. April 3, 1952.]

NATIONAL SCHOOL STUDIOS, INC., *Appellant,* v. SUPERIOR SCHOOL PHOTO SERVICE, INC., *et al., Respondents.*[1]

[1] Reported in 242 P. (2d) 756.

*H. A. Martin,* for appellant.

*Guttormsen, Scholfield, Willets & Ager,* for respondents.

DONWORTH, J.—This action was instituted by an employer to enjoin a former employee from breaching a covenant (contained in his contract of employment) not to compete with his employer during a period of eighteen months after termination of his employment. The employer also prayed for injunctive relief against the two other defendants who were alleged to have conspired with the employee to breach his covenant. Damages were also sought against all defendants because of their actions in furtherance of the alleged conspiracy.

The defendants denied the principal allegations of the complaint and set up three affirmative defenses:

(1) That the contract was not supported by a valid consideration; (2) that the contract lacked mutuality of obli-

gation and was unfair and inequitable; and (3) that the plaintiff had no trade secrets, since its business methods were not unusual and the relationship of defendants Lien and Hunt to plaintiff's customers was not confidential. Defendant Lien alleged as a fourth affirmative defense that the employer had itself breached the contract of employment by replacing Lien with another employee without prior notice to him.

These allegations having been denied in plaintiff's reply, the cause was tried to the court sitting without a jury. After the trial, the court rendered a memorandum decision in which the authorities bearing upon the questions involved were thoroughly considered. In its decision, the trial court concluded (1) that, assuming the covenant not to compete was valid, it would be inequitable to grant injunctive relief because there was no mutuality of obligation; and (2) that no damages could be recovered because none had been proved with reasonable certainty.

Accordingly, the trial court entered findings of fact and conclusions of law and judgment dismissing plaintiff's action. From this disposition, plaintiff has appealed to this court.

We shall refer to respondents, respectively, as Superior, Lien, and Hunt.

The material facts as revealed by the record are as follows:

Appellant is a Minnesota corporation which succeeded to the business of a copartnership known as National School Studios. Its business is photographing school children. Respondent Lien was originally employed by appellant's predecessor in 1940 as a salesman for the purpose of contacting the principals and other heads of schools in the states of Washington, Oregon, and Idaho. It was his duty to solicit business, make arrangements to take pictures of the students at various schools, take the pictures, and ship the film to appellant's plant in Minnesota, whereupon his duties with respect to each particular transaction ceased. Appellant processed the films and shipped the printed photographs to

the school, where the students were allowed to inspect them and order whatever quantity they desired. The school principal collected from the students the amounts due for photographs purchased and remitted directly to appellant. Upon receipt thereof, appellant credited Lien's account with his commission, which was forty per cent of such gross receipts.

Lien's original employment in 1940 was pursuant to an oral contract. He received some slight training, was furnished with necessary equipment and a list of about twenty customers, and was assigned the territory above mentioned. He had a drawing account of seventy-five dollars per week, which was charged, however, against his commissions earned. Lien usually drew one hundred dollars or more per week.

Lien worked for two years on this basis until he left his employment in 1942 to serve in the armed forces. When he returned in November, 1945, he was re-assigned to his old territory under the same terms and conditions of employment. In August, 1946, at his employer's request, he signed a written contract containing a restrictive covenant not to solicit business from his employer's customers, directly or indirectly, in his territory for a period of eighteen months after the termination of his employment. The contract provided for its termination at will by either party upon written notice thereof being mailed to the other. The terms and conditions of his employment were not otherwise changed, and he continued in the employment of appellant corporation (which had succeeded to the business of the copartnership in 1948) until about August 28, 1950, when this action was begun. During each of his last two years in appellant's employ, he secured about $50,000 gross volume in business, from which he netted, after payment of expenses, about $10,000 each year. He drew his last pay check May 24, 1950.

Respondent Hunt had worked for some years as a salesman for appellant's predecessor in a certain territory in the state of Illinois. In 1945, he signed a contract with his employer containing provisions identical with Lien's contract,

except that the restrictive covenant was limited to Hunt's Illinois territory. Hunt and Lien were acquainted with each other; Hunt had solicited Lien's territory for a few months while Lien was in the armed forces. They each knew that the other had signed a contract restraining him from competing with appellant in his respective territory for eighteen months after ceasing to be employed by appellant.

In 1949, Lien and Hunt first talked about organizing Superior. They exchanged a few letters about the project prior to the time that Hunt came to Washington in April, 1950. Superior was incorporated in this state May 2, 1950, for the purpose of engaging in the same type of business as appellant's.

While Lien was still in appellant's employ, he either loaned to Hunt the sum of eight thousand dollars or purchased stock in Superior in that amount. Respondents contended that it was a bona fide loan, while appellant insisted that Lien took stock for that amount.

It is apparent from his testimony that Lien planned in May, 1950, to work for both appellant and Superior at the same time. He intended to keep up his average volume of business for appellant, but whatever business he could secure over that amount he would divert to Superior. His eight thousand dollars had been used by Superior for its business operations, and Lien's only means of obtaining repayment or any return on his investment were from the earnings of Superior.

Prior, and subsequent, to the organization of Superior, Lien continued to solicit business for appellant, and by June 15, 1950 (the end of the school year), he had booked approximately $25,000 worth of business for appellant. Lien admitted that sometime prior to August 1, 1950, he had carried Superior contract forms, but he was unable to recall having booked any business for Superior.

Through some source not clearly revealed in the record, appellant became aware of Hunt's activities in organizing Superior, and it became suspicious of Lien. It sent

Prothero, a salesman, to this state to investigate. Prothero made two telephone calls to the office of Superior asking for Lien and was advised that Lien was then out of the office but would be in at nine o'clock the next morning. Prothero thereupon returned to Minnesota, reported this information to appellant, and was immediately sent back to this state as Lien's replacement.

Appellant gave no notice of this action to Lien, and he was not aware that he had been replaced until he received from a school principal a letter dated August 15, 1950, written by Prothero to the principal, in which Prothero announced himself as Lien's successor. Prothero, under authority of appellant, sent out similar letters to others of appellant's customers. Upon learning of Prothero's activities, Lien went to work for Superior and solicited all the business he could, including appellant's customers. By the time the case was tried in May, 1951, Lien and Hunt had succeeded in obtaining business for Superior from approximately half of the schools which had been customers of appellant during the preceding two years.

Appellant's complaint was filed August 28, 1950, in which it asked for an injunction and damages against all respondents.

Twelve errors are assigned by appellant as grounds for reversal. We will discuss them in a somewhat different order than as set out in appellant's brief.

Assignments III, IV, V, VII, and VIII all relate to the refusal of the trial court to enforce by injunction the covenant in Lien's contract not to compete with appellant for eighteen months after termination of his employment and its refusal to enjoin the other two respondents from assisting and procuring Lien to violate his covenant.

It is our opinion that this question is now moot because the eighteen-month period has expired. The latest possible date which can be fixed for the termination of Lien's employment with appellant is August 28, 1950, when this action was instituted. Consequently, assuming the validity

of this restrictive covenant, its effective life terminated by force of the contract on Feburary 28, 1952.

As we said in *Pacific Savings & Loan Ass'n v. Smith,* 121 Wash. 595, 209 Pac. 1086, which involved the question as to who was entitled to possession of certain real property during the year of redemption following a mortgage foreclosure sale:

"The sale was on the 16th day of July, 1921. The year for redemption commenced on that date. The case was argued here on the 18th day of May, 1922. We were unable to reach a decision of the case before the expiration of the year of redemption, which, of course, was July 16, 1922. At this time the controversy between the parties has terminated by lapse of time. Only a moot question is left. We have always held that we will not decide a case where the controversy between the contending parties has ceased, and when there would be nothing on which our judgment could operate."

A rehearing was later granted, and the disposition of the case by the department was upheld.

Another case involving a similar right of redemption is *Holly-Mason Hardware Co. v. Schnatterly,* 111 Wash. 29, 189 Pac. 545. There, the period for redemption expired March 1, 1920. The case was submitted to this court for decision on February 4, 1920. In holding that the question involved had become moot, we said:

"As the respondents contended only for the right· of possession during the period of redemption, their right expired on March 1, 1920, and as the statute regulating the appellate procedure (Rem. Code, § 1740) provides that a remittitur upon a judgment of this court shall not be sent down to the lower court until thirty days after the decision is filed, under no possible condition could the court, since the cause was submitted, have rendered a decision that would have determined any controversy between the parties."

*State ex rel. Holme v. Fawcett,* 127 Wash. 489, 221 Pac. 305, was a mandamus proceeding to compel the city council of Tacoma to increase the civil service board's budget allowance for the year 1923. This court filed its decision December 14, 1923 (eighteen days prior to the end of the year for

which the budget allowance had been made). In holding that the question had become moot, it was said by this court:

"The civil service board appealed from the order of dismissal, which appeal, in the due course of procedure, came on for hearing and was heard and submitted to this court at its October session, 1923.

"We are asked to determine the cause upon its merits, and direct such a judgment as to us the justice of the case merits, but we are confronted with the situation that no order which this court can now enter, or which it could have entered subsequent to the submission of the cause, would be of avail to the civil service board. The cause must take its orderly course of procedure through this court; after the remittitur from this court reaches the trial court, there must be some time elapse before the trial court can correct its judgment to conform therewith; and, after this, the city council must have a reasonable time to comply with the order. The ordinary delays the law thus enforces will extend the time beyond the period of the current year, and it is only during the current year that the fund so provided can be used."

The present case was argued in this court January 21, 1952, which was five weeks prior to the expiration of the restrictive covenant. Hence, no judgment which this court might enter could have become effective prior to February 28, 1952.

Rule 15, Rules Peculiar to the Business of the Supreme Court, 34A Wn. (2d) 7, provides that our decision shall become final thirty days after its filing unless a petition for rehearing be filed within that time.

Until our remittitur reaches the trial court, the status of the parties remains unchanged. It would be a useless judicial act to decide a question when the decision cannot possibly affect the rights of the parties until after the controversy has ceased to exist.

We are, therefore, compelled to hold that the question presented by the assignments of error last above referred to has become moot, and we must decline to express any opinion thereon.

Appellant in its sixth assignment of error complains that the court erred in refusing to enjoin respondents' solicitation of its customers, irrespective of the restrictive covenant contained in Lien's contract of employment.

In support of this contention, appellant cites our decisions in *Davis & Co. v. Miller,* 104 Wash. 444, 177 Pac. 323, and *Cooper & Co. v. Anchor Securities Co.,* 9 Wn. (2d) 45, 113 P. (2d) 845.

In the absence of an express contract not to compete after termination of his employment, an employee is generally free to solicit business from customers of his former employer, although he gained knowledge of such customers while in the employer's service.

Restatement, Agency, 896, § 396, states this principle as follows:

*"Using Confidential Information after Termination of Agency.*

"Unless otherwise agreed, after the termination of the agency, the agent:

"(a) has no duty not to compete with the principal; and

"(b) is subject to a duty to the principal not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent may use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent."

This court has in two cases refused to enjoin an employee from competing with his former employer where there was no contract containing a restrictive covenant. *Ice Delivery Co. of Spokane v. Davis,* 137 Wash. 649, 243 Pac. 842, and *City Ice & Cold Storage Co. v. Kinnee,* 140 Wash. 381, 249 Pac. 782. Both of these cases, as their titles indicate, involved an injunction sought against a driver of an ice route who, after termination of his employment, competed with his former employer along the same route.

In the *City Ice & Cold Storage Company* case we said:

"We are unable to see that the information as to who the ice company's customers were, which was acquired by Kinnee through previous deliveries made by himself and Bearden, was the acquiring of a trade secret; nor was it the acquiring of information of such a peculiar, confidential and secret nature as to be in any sense likened to a trade secret."

In the instant case, both Lien and his successor, Prothero, used a published, public directory of schools for the purpose of contacting the trade. Under such circumstances, it could hardly be maintained that Lien and the other respondents were possessed of such trade secrets, or other such confidential information, as would justify a court of equity in restraining their competition with appellant.

The *Davis & Co.* case, *supra*, is readily distinguishable on its facts from the case at bar. Miller, the former employee, had been a trusted, key man in the Davis & Co. organization, which was engaged in the business of selling, managing, and renting real estate for its customers. He was possessed of confidential information and enjoyed a very personal relationship with many of the company's customers. When he left its employ to engage in a similar business for himself as a competitor and began a systematic solicitation of the customers of his former employer, an injunction was sought. The trial court granted a nonsuit; we reversed the judgment and remanded the case for a new trial.

In *Ice Delivery Company of Spokane, supra,* we considered the *Davis & Co.* case and pointed out the confidential relationship there involved, saying:

"The facts and circumstances in that case and those in the present one are not parallel. In that case, the services under consideration were more largely of a personal sort in the performance of duties of the agency. The success of that service depended upon the personal ability of the agent to obtain as high rentals as possible and reasonable from tenants who were responsible and dependable. For those purposes each piece of property handled was a separate and individual thing. Davis & Co. had established a large and successful business of that kind, largely through the efforts of Miller within the knowledge of the clientele who were

acquainted with him. The service was that of a representative between the owner and the tenant that necessitated the fixing of prices, terms of tenancy and knowledge of the financial standings of all the persons involved, with changes in that respect, if any, as they happened. Handling the business required daily conferences of all the employees and embraced confidences too important for others than John Davis, who was the head of the concern, Miller and one other employee. Miller was always there, he was the one man in the confidence of Davis."

The *Cooper & Co.* case, *supra*, also relied upon by appellant, is another case involving the use of confidential knowledge acquired by the employee, to wit, lists of insurance renewals, in competition with a company to whom he had sold the business with a covenant not to compete. Neither it nor the *Davis & Co.* case is controlling where the conduct complained of is a salesman's solicitation of customers whose identity is either well known or readily ascertainable by reference to a public directory utilized by the trade. There can be no trade secrets under such circumstances. No unfair competition was proved by appellant. Therefore, the trial court committed no error in denying appellant injunctive relief.

An additional reason for denying such relief in this case is that, in view of the time limitation in the restrictive covenant in Lien's contract, respondents should not now be enjoined in any event. Under the terms of the covenant, Lien was not to compete with his employer for a period of eighteen months after termination of the employment. That period has elapsed, and, as we have previously stated, any question as to appellant's right of injunctive relief during that period based upon the covenant has become moot. Even if we were to grant injunctive relief to appellant upon the ground of unfair competition, irrespective of the covenant, this court would not be justified in granting relief beyond the expiration of the eighteen-month period which the parties themselves fixed in their contract as affording the employer reasonable protection against competition by Lien. Appellant, having agreed to this limitation of

eighteen months, cannot be heard to say that it is now entitled to protection against competition for any longer period.

Appellant assigns as error (Nos. II and IX) the trial court's denial of its claim for damages. In discussing these assignments, we shall assume the validity of the restrictive covenant in Lien's contract of employment and the sufficiency of the proof of its breach by him acting in concert with the other two respondents.

In proof of the amount of damages sustained by it, appellant offered the deposition of its president taken on written interrogatories. Upon his direct examination, this officer testified:

"Q. Was there any profit to the plaintiff from the business obtained by the defendant, Victor G. Lien, for the plaintiff during the years 1949-1950, concerning which you have testified? A. Yes. Q. If you answer that there did accrue to plaintiff profit from such business so obtained how much did such profit amount to? A. $4,957.41. Q. If you answer that there did accrue to plaintiff such profit, how do you arrive at the amount of profit so accruing to plaintiff? A. We made 10% of the dollar volume."

When the deposition was read at the trial, respondent Lien moved to strike the last answer quoted above on the ground that it was only the witness' conclusion unsupported by any factual proof.

After counsel had argued the matter, the trial court denied the motion to strike without prejudice to respondents' right to renew their motion later in the trial. The court indicated considerable doubt regarding its ruling, stating in part:

"My feeling about the matter is this: The net profit is the ultimate question in issue on this phase of the case, and the defendant, I think, is entitled to know how that profit is computed."

The same motion was made by respondents when the portion of the deposition was read relating the profit made by appellant in 1948-1949 from business produced by respondent Lien. The president testified that its profit for

that year from Lien's business amounted to $5,765.94 and, when asked how this figure was arrived at, again stated: "We made 10% of the dollar volume." The trial court made the same ruling as before.

Appellant produced no other evidence as to its loss of net profit except the testimony of its president above quoted.

. In its memorandum opinion filed subsequent to the close of the trial, the court stated on this point: ·

. "Plaintiff is seeking both damages and an injunction. The plaintiff has shown a very substantial loss in gross revenues and customers. Plaintiff declined to show its costs, and has not proved any reliable basis for determining the amount of its loss, if any, in net profit. Consequently, plaintiff is not entitled to recover damages."

In our opinion, the trial court was correct in denying appellant judgment for damages because of the inadequacy of its proof. The burden was upon appellant to prove with reasonable certainty its loss of profits caused by respondents' acts. The bare, oral statement by appellant's president that it made ten per cent profit on the dollar volume of the business obtained by Lien is a mere conclusion. It does not constitute the reasonable certainty of proof which is required under the circumstances shown to exist in this case.

It is common knowledge that such a corporation as appellant (which was doing business in nearly every state in the Union) must keep detailed books of account from which its *net* income can be ascertained. It would have been a simple matter to have computed such income with respect to the portion of its business obtained by Lien. Appellant had no difficulty in ascertaining from its ledger sheets the gross dollar volume of business obtained by Lien for the two years prior to his leaving its employ.

From the record before us, it appears that in 1950-1951 Superior had grossed $34,993.83 in business from schools which had been appellant's customers in either or both of the two preceding years. In the absence of reasonably certain proof as to what appellant's net profit would have been had it continued to enjoy this business, there is no competent

evidence upon which a judgment can be based. The burden was upon appellant to furnish such proof, and this it failed to do.

The trial court, in holding that appellant's evidence on this point was insufficient, was following the rule stated by this court in numerous decisions. The most recent statement is found in *California Eastern Airways v. Alaska Airlines,* 38 Wn. (2d) 378, 229 P. (2d) 540, in which we said:

"It is not necessary that lost profits be susceptible of exact calculation. It is sufficient if there be data from which the profits can be ascertained with a reasonable degree of certainty and exactness. *Kruegel v. Kitchen,* 33 Wash. 214, 74 Pac. 373; 15 Am. Jur., Damages, 558, § 150; 25 C. J. S., Damages, 516, § 42 (a). Thus, it was incumbent upon appellant to prove, preferably by the records of the company, but in any event by competent evidence, and with sufficient certainty to remove it from the realm of speculation, that there were passengers whom it could and would have transported but for want of the seats withheld by respondent, upon which transportation appellant would have made a profit. See *Pappas v. Zerwoodis,* 21 Wn. (2d) 725, 153 P. (2d) 170, as to the burden in proving lost profits."

See, also, *Cuschner v. Pittsburgh-Hickson Co.,* 91 Wash. 371, 157 Pac. 879; *DeHoney v. Gjarde,* 134 Wash. 647, 236 Pac. 290; *Whitaker v. G. B. & S. Mill, Inc.,* 21 Wn. (2d) 625, 152 P. (2d) 719; Restatement, Contracts, 515, § 331.

The only remaining assignment of error which need be discussed is No. X, in which appellant complains because the trial court refused to permit appellant to show the net profit made by respondents from business obtained from former customers of appellant. Since no similarity in their respective methods of doing business (other than soliciting) was shown to exist, it was not error for the trial court to sustain respondents' objections to this line of interrogation. In fact, appellant's president testified that its method of developing film and producing pictures was an exclusive process not used by any competitor. Thus, the determination of respondents' net profit would have had no probative value in fixing the amount of appellant's damages.

Appellant's other assignments of error are general in character and, from what we have already stated, must be held to be without merit.

From our consideration of all of appellant's assignments (other than those presenting a moot question), we conclude that the trial court committed no reversible error, and its judgment dismissing the action is hereby affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

June 4, 1952. Petition for rehearing denied.

