**EXERCYCLE OF MICHIGAN, INC.,**
**Plaintiff-Appellee,**

v.

**George B. WAYSON and Hale & Hearty, Inc., Defendants-Appellants.**

**No. 14621.**

United States Court of Appeals
Seventh Circuit.

Feb. 12, 1965.

Bernard H. Puckowitz, Chicago, Ill., for appellants.

Martin L. Bogot, Chicago, Ill., Hugo Sonnenschein, Jr., Chicago, Ill., Martin, Craig, Chester & Sonnenschein, Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG and KILEY, Circuit Judges, and GRANT, District Judge.

KILEY, Circuit Judge.

Plaintiff, suing as third party beneficiary, had judgment for $22,324.50 in this diversity suit for an accounting,[1] based on claims of breach of defendants' contract and of malicious interference with plaintiff's business and contract rights. Defendants appeal, and we affirm the judgment.

Exercycle Corporation of New York sells its machines through a national system of territorial distributorships. During the period in question here, each contract between Exercycle Corporation and the various distributors, including those of plaintiff and defendants, granted the distributor an exclusive right to sell exercycles within a specified area and each contract contained a provision similar to that of clause 11 of defendants' contract. In that clause the distributor agreed "Not to sell Exercycles in any territory other than that assigned to him by the Company under clause 1."

Defendants' contract, entered into on December 21, 1955, giving them the exclusive distributorship in Greater Chicago and nearby cities, was, with modifications not material here, in effect from that time until the trial. From time to time defendants were given non-exclusive rights to sell and advertise in other territories, but never in plaintiff's territory, which included the state of Michigan and the area within a fifty mile radius of Toledo, Ohio. Plaintiff's contract was in effect from October 15, 1955, until the franchise was surrendered pending suit.

There is no merit in defendants' claim that the district court lacked diversity jurisdiction. The complaint alleged that the "amount in controversy" exceeds $10,000 and claimed damages in excess of $50,000. The actual damages found were well in excess of $10,000. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Seth v. British Overseas Airways Corp., 329 F.2d 302, 305 (1st Cir. 1964).

The district court found, on conflicting evidence, that early in January 1958 plaintiff protested to defendants about the latter's invasion of plaintiff's territory, that in November 1958 Exercycle Corporation "reminded" defendants that Michigan was plaintiff's exclusive territory in which no other distributor could sell exercycles, but that defendants continued selling in Michigan, and that beginning in 1957 defendants sold 123 exercycles in that state. The court found also that clause 11 in defendants' contract was for the purpose of protecting plaintiff's exclusive territorial rights. Those findings are supported by the evidence and are not clearly erroneous. F.R.Civ.P. 52(a).

Defendants claim that plaintiff failed to prove its case because plaintiff's president and principal witness, Donald Harris, was impeached. Any inconsistencies in the testimony of the witness were a matter of credibility for the district court to resolve. On the findings made, the district court concluded that defendants' sales in plaintiff's territory were in violation of plaintiff's third party rights in clause 11 of defendants' contract with Exercycle Corporation.

We are not persuaded by defendants' argument that the contract did not contemplate third party benefits, and that they were unaware of the terms of other distributorship contracts. Since they knew of the national scope of Exercycle Corporation's business and the territorial limitation of their own franchise, they knew, or should have known, that beyond

1. Pending suit plaintiff surrendered its franchise rendering moot its prayer for injunction.

the limits of their own was another's territory and that they transgressed these boundaries at their peril.

■ The clause prohibiting defendants from selling in other than their assigned territory, as the district court found, was intended for the protection of other distributors, including plaintiff. This purpose was primary, and not merely incidental. Sachs v. Ohio National Life Ins. Co., 148 F.2d 128, 132, 158 A.L.R. 688 (7th Cir.), cert. denied 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452 (1945). This finding justifies plaintiff's standing to sue, Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 178 N.E. 498, 81 A.L.R. 1262 (1931), and established its right to recover under the third party beneficiary theory on the facts in this case, Sachs v. Ohio National Life Ins. Co., 148 F.2d 128 (7th Cir.), cert. denied 326 U.S. 753, 66 S.Ct. 92 (1945).

■■ Defendants contend that the proof of damages was speculative and legally insufficient to support the judgment. We think there was substantial proof of damages. Simply because the loss of profits cannot be shown with precision, defendant, who caused the damages, may not be heard to say that no damages may be awarded. William H. Rankin Co. v. Associated Bill Posters, 42 F.2d 152, 155 (2d Cir.), cert. denied 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765 (1930); A. C. Becken Co. v. Gemex Corp., 272 F.2d 1, 5 (7th Cir. 1959), cert. denied 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 876 (1960). The district court found that if the 123 sales had not been made in plaintiff's exclusive territory it would have had increased sales of at least 123 exercycles; that the gross selling price of the 123 exercycles was $56,715.00; that the cost of sales would have been $34,390.50; and that plaintiff's lost profits were accordingly $22,324.50—the amount of the judgment. A tabulation of defendants' records in evidence showed the retail prices of each of the 123 machines, and there was testimony of the costs of selling. There is testimony that from October 1954 to October 1961 plaintiff had sales offices in Detroit, Kalamazoo, Flint, Lansing and Grand Rapids, with eight salesmen covering its territory; that the president of plaintiff, since he began selling them, had sold between 1,000 and 1,200 exercycles; and that plaintiff advertised in Michigan—all of which went to prove its capacity for making the sales made by defendant.

It is our opinion that on these facts, in this situation, the amount of the court's award was not based merely on speculation, but was reasonably inferable. Falstaff Brewing Corp. v. Iowa Fruit and Produce Co., 112 F.2d 101, 104 (8th Cir. 1940).

We have considered all the points argued. The judgment is affirmed.