ORKIN EXTERMINATING COMPANY,
INC. (ARWELL DIVISION),
Appellant,

v.

Robert H. BURNETT, Appellee.

No. 52925.

Supreme Court of Iowa.

July 18, 1968.

Rehearing Denied Sept. 16, 1968.

428

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Irish & Skinner, Altoona, for appellee.

STUART, Justice.

This action was brought in equity to enforce a covenant not to compete contained in an employment contract between the parties. This is the second appeal. In the opinion filed November 15, 1966, 259 Iowa 1218, 146 N.W.2d 320, 327, we followed the language of the covenant and held defendant must be enjoined "from engaging directly or indirectly in the same or similar or competitive line of business as that carried on by the plaintiff-company, or from working for any individual, firm or corporation engaged in such business or similar or competitive line of business, and from in any way, directly or indirectly, taking away any of the company's business or customers, or destroying, injuring or damaging the good will of the plaintiff-company with its customers within a ten-mile radius of any city, town, village or other area in which defendant may have worked while employed by plaintiff, for a period of three years". We remanded the case for a determination of the damages plaintiff sustained by reasons of defendant's breach of the covenant and for decree in conformance with this opinion.

On January 16, 1967 the trial court issued a writ of injunction to run for three years from the date of the writ. Defendant filed a motion for modification of the injunction seeking to have it commence on the date of the termination of the employment, February 28, 1966. On February 9, 1967, plaintiff filed an application for defendant to show cause why he should not be held in contempt of court for violating the injunction. On March 9, 1967 the two matters set out above as well as the determination of the amount of damages came on for trial. The trial court modified the injunction to run for three years from and after February 28, 1966, awarded plaintiff damages of $1000 and made no finding on

the contempt citation. Plaintiff appealed. Defendant cross-appealed from the award of damages.

I. Plaintiff's right to an injunction is founded on the restrictive covenant contained in defendant's contract of employment with plaintiff's predecessor. It provided: "Representative agrees that on the termination for any cause whatsoever of his employment with the company, he will not, for a period of three (3) years * * [compete with the employer] * * *".

▮ The trial court was correct in modifying the writ of injunction to provide for the three year period to commence February 28, 1966, the date defendant's employment terminated.

▮ II. Plaintiff claims the trial court erred in allowing only $1000 damages. Defendant on cross-appeal claims the evidence was not sufficient to sustain any award of damages. Our review is de novo. We give weight to the trial court's findings of fact, but are not bound by them. R.C.P. 344(f) (7).

▮ The measure of the damages resulting from the wrongful breach of an agreement not to compete is the loss naturally resulting from the breach, including loss of profits. Moorehead v. Hyde and Braden, 38 Iowa 382, 386; Galucha v. Naso, 147 Iowa 309, 311, 126 N.W. 146, 147; Peterson v. Johnson Nut Co., 209 Minn. 470, 297 N.W. 178, 181; South Carolina Finance Corp. v. West Side Finance Co., 236 S.C. 109, 113 S.E.2d 329, 335–336; 22 Am.Jur. 2d 113, Damages, § 79; Anno: 127 A.L.R. 1152, 1156, 1168; cf. Eyerly v. Smith, 210 Iowa 1056, 1059, 231 N.W. 383, 385. We now summarize the evidence by which plaintiff sought to prove damages.

Each month plaintiff's servicemen, including defendant, forwarded to the district office invoices for the services performed. These invoices were part of plaintiff's regular accounting procedure. The district manager testified the records were kept under his supervision and identified exhibit 2, as a list of plaintiff's customers serviced by defendant which he continued to service in his own behalf under the trade name of Bob's Pest Control after his employment was terminated. It was abstracted from the invoices (exhibit 1). It listed the customer's name, the date plaintiff lost the account and the yearly charge for service.

Defendant confirmed the list and the fact he serviced the accounts. His only disagreement was with some of the dates. Had these accounts continued with plaintiff they would have produced a gross revenue of over $4500 between March 1966, the first month after defendant's employment was terminated, and March 1967. The contracts were for one year and were renewed automatically. However, they were cancellable by either party on 30 days notice. Some of the accounts had been with plaintiff eight to ten years.

To establish the loss of profits resulting from the deceased revenue, plaintiff offered the testimony of its executive vice president who explained plaintiff's practice of keeping a current running analysis of operational costs. As a result of this study it was determined the direct operating expense of the district in which defendant was employed was 65.6 per cent of the total sales. This included the salary and expenses of supervisory personnel and the district office. Expenses chargeable to the serviceman, including salary, commissions, direct automobile expense, meals, motel, travel expense and supplies, amounted to 50.1 per cent of total sales. If expenses incurred on a national level such as general operating expenses of the company, executives salaries, national advertising, etc., were included the total cost rose to 89.6 per cent of the total sales.

Defendant argues that since the contracts were cancellable at will and there was no competent evidence any customer cancelled the contract because of any act of the appellee, the damages are specula-

tive, and the evidence presented no basis for estimating the amount of the damages in money with reasonable certainty. The evidence clearly shows plaintiff was damaged to some extent by defendant's breach of the covenant not to compete. The question is the sufficiency of the evidence to enable the finder of fact to arrive at a dollar amount.

■ Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated. Natkin & Co. v. R. F. Ball Construction Co., 255 Iowa 1156, 1167, 123 N.W.2d 415, 422; Meeker v. Stuart, 188 F.Supp. 272, 276; Hedrick v. Perry, 102 F.2d 802, 807; Gallagher v. Vogel, 157 Neb. 670, 61 N.W. 2d 245, 250–251; South Carolina Finance Corp. v. West Side Finance Co., 236 S.C. 109, 113 S.E.2d 329.

■ We believe the evidence here was sufficient to enable the fact finder to approximate the monetary damages sustained by plaintiff. The evidence as to the amount of plaintiff's business which transferred to defendant was definite. The evidence of the cost of producing that amount of sales was reasonably certain. The only fact in doubt was whether plaintiff might not have lost this business in any event. Such possibility does not render the evidence so speculative that plaintiff should be deprived of all recovery.

■ "While the measure of damages in an action for the breach of an agreement by the seller not to re-enter business in competition with the buyer is usually difficult of exact computation, he who is damaged will not be precluded from recovering because of that fact." Gallagher v. Vogel, supra, 61 N.W.2d at 250.

In Exercycle of Michigan, Inc. v. Wayson, 341 F.2d 335, 337, plaintiff sought to recover damages for defendant's infringement upon his exclusive territory. There was evidence defendant made 123 sales in plaintiff's territory together with gross revenue, costs and profit which would have resulted. The court said: "Defendants contend that the proof of damages was speculative and legally insufficient to support the judgment. We think there was substantial proof of damages. Simply because the loss of profits cannot be shown with precision, defendant, who caused the damages, may not be heard to say that no damages may be awarded."

See also: National School Studios v. Superior School Photo Service, 40 Wash. 2d 263, 242 P.2d 756.

The trial court did not explain how he arrived at damages of $1000. There was evidence that in a year's time plaintiff lost sales of $4500. The cost analysis indicated the cost of servicing this lost revenue was 50.1 per cent of the sales. The national cost and the cost of maintaining the district office did not decrease with the loss of sales. Therefore if plaintiff had retained all these customers it would have suffered a loss of profit in one year of about $2500. It is reasonable to conclude a major portion of this business loss was a result of defendant's breach of the covenant not to compete. The loss would continue beyond the first year and constitute an additional loss of good will. We therefore increase the damages awarded to plaintiff to $3000.

■ III. Plaintiff claims the trial court erred in not ruling on its application for defendant to show cause why he should not be held in contempt for violating the injunction and asks us to find him in contempt of this court and impose punishment. Ordinarily our review of contempt citations is by certiorari and generally involves a finding of contempt by the trial court. We are authorized, however, to find contempt "notwithstanding the fact that the

district judge found that a contempt had not been committed". Lake v. Wolfe, 108 Iowa 184, 186, 78 N.W. 811.

Here the matter reaches us as a proposition for reversal in an equity appeal. Defendant makes no issue of the procedural questions which might have been raised but argues that there is no competent evidence he did any act upon which he could be adjudged guilty of contempt. We, therefore, do not hesitate to consider the question on its merits even though there is no ruling by the trial court.

Contempt cases are an exception to the ordinary review by certiorari which limits our consideration to the court's jurisdiction and the legality of his acts. Wood v. Iowa State Commerce Commission, 253 Iowa 797, 801–802, 113 N.W.2d 710, 712; City of Iowa City v. White, 253 Iowa 41, 48, 111 N.W.2d 266, 270; Lineberger v. Bagley, 231 Iowa 937, 940–941, 2 N.W.2d 305, 307.

■ In contempt matters we review the evidence and give much weight to the trial court's findings of fact, but are not bound by them. "The exact extent to which we may go in deciding questions of fact from the record is vaguely defined." Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605, 612; Battani v. Grund, 244 Iowa 623, 631, 56 N.W.2d 166, 171. We have no findings of fact before us in this case.

■ The proof of contempt must be clear and satisfactory. American Security Benevolent Association v. District Court, 259 Iowa 983, 994, 147 N.W.2d 55, 59. If there is evidence in the record to show clearly and satisfactorily that defendant intentionally and of purpose violated the injunction he can properly be adjudged guilty of contempt. Hatlestad v. Hardin Co. Dist. Court, 137 Iowa 146, 151, 114 N.W. 628, 630.

■ In deciding whether a defendant is in contempt of court for violating an injunctive order, we take into consideration the spirit as well as the letter of the injunction to determine if its intent has been

honestly and fairly obeyed. No artful attempt to evade it will be allowed to succeed, if the act in fact constitutes a substantial violation of the injunction. Carr v. District Court, 147 Iowa 663, 672, 126 N.W. 791, 794; Wormald v. Macy, Ky., 349 S.W.2d 199; Smolczyk v. Gaston, 147 Neb. 681, 24 N.W.2d 862, 864–865; 43 C. J.S. Injunctions § 264, p. 1016; 28 Am.Jur. 837, Injunctions, § 324.

The writ is worded in the language of the restrictive covenant and cases which have determined what conduct violates such covenant should be helpful in determining when an injunction containing the same restrictive language is violated.

In Wilson v. Delaney, 137 Iowa 636, 641, 113 N.W. 842, 844, we said the prohibition in the restriction was violated "* * * when the scope and character of the employment is such as to result in all likelihood in substantial interference with the business which was the subject of the contract. And it will not do to say that there can be no interference if the seller shall refrain from any act which can operate to induce the customers of the old business to transfer their patronage to his new employer. Influence may be exerted indirectly as well as directly, and the purchaser of a business and its good will is entitled not only to protection in respect of customers then patrons, but to enter the field of competition unhampered by any adverse influence of the seller."

In Uptown Food Stores, Inc. v. Ginsberg, 255 Iowa 462, 468, 123 N.W.2d 59, 63, 1 A.L.R.3d 765, we said: "The question to be determined is whether the covenant not to engage in the business or in any way to compete is breached by acts of one of the covenanters. This is to be determined by the ordinary rules of construction, the intent of the parties from the wording of the contract itself with regard to the circumstances, and purpose to be accomplished. Haggin v. Derby, 209 Iowa 939, 945, 229 N.W. 257, 260."

Plaintiff's evidence established that defendant and Mr. Auten, a second employee

of plaintiff covered by the same restrictive covenant in the Ft. Dodge area, exchanged lists of customers in December 1966 following our decision in November. After the injunction was issued, defendant introduced Mr. Auten to some of his customers explaining the court had put him out of business and there was a new man in the territory. Mr. Auten then made arrangements to service these customers. In February 1967 Mr. Auten and defendant exchanged homes. Defendant went to Ft. Dodge and serviced customers formerly served by Auten and Auten came to Des Moines and serviced customers formerly serviced by defendant. He continued to operate under the trade name of Bob's Pest Control although his name was Gerald. Defendant was doing business in Ft. Dodge as Jerry's Pest Control.

▮▮▮ In our opinion the evidence discloses a conscious effort to evade the effect of the injunction. Defendant, by introducing Mr. Auten to his customers as he did, after the injunction was issued, violated the injunction by indirectly taking away plaintiff's business and customers and damaging its good will within the restricted area. The court cannot permit its orders to be ignored. We therefore find defendant guilty of contempt under chapter 665, Code of Iowa.

▮▮▮ In our previous opinion we determined that an injunction "must issue". The injunction was issued by the trial court in the language of our opinion. Defendant's violation of the injunction was, in effect, a violation of our decree. Under these peculiar circumstances we feel justified in imposing the penalty ourselves rather than remanding the case to the district court for its determination. We therefore remand the case to the district court with directions for it to enter an order finding defendant guilty of contempt and imposing a fine of $250, and providing for such further punishment as it may deem appropriate in the event defendant fails to pay said fine. Trial court is also directed to enter judgment in favor of plaintiff and against defendant in the amount of $3000 in accordance herewith.

Reversed and remanded.

GARFIELD, C. J., and LARSON, SNELL, and MASON, JJ., concur.

LeGRAND, MOORE, RAWLINGS, and BECKER, JJ., dissent.

LeGRAND, Justice (dissenting).

I dissent from Divisions II and III of the majority opinion.

The majority concedes damages in an action of this kind are uncertain and difficult to prove. The trial court found plaintiff was entitled to $1000.00. The majority has increased that amount to $3000.00. The majority figure is arrived at by assuming *all* plaintiff's former customers now serviced by defendant were lost because the restrictive covenant was violated. I doubt that plaintiff is entitled to this generous conclusion. Furthermore, I find no evidence in the record to justify any award for loss of good will.

Since the majority apparently concedes the figure arrived at leaves something to be desired as far as certainty and proof are concerned, I would prefer to permit the trial court's finding to stand. This, it seems to me, is an ideal case for the application of our oft-repeated rule that in de novo appeals we give weight to the findings of the trial court.

I find the result achieved by the majority is no better, merely larger, than that of the trial court.

I also dissent from that part of the majority opinion which finds the defendant in contempt and assesses his punishment. I agree the matter of contempt was before the trial court and some finding should have been made, one way or the other. Under such circumstances we should remand for entry of a judgment based upon the evidence presented to the trial court. Here we have elected to by-pass this procedure and make an original finding of contempt ourselves. This is an undesirable

policy to adopt. The majority relationalizes by saying the contempt committed was really against this court and not against the district court because the injunction issued was pursuant to our opinion on the first appeal of this case and therefore the violation was actually "a contempt of the order of this court." (146 N.W.2d 320)

I cannot agree with this reasoning. In our original opinion we found an injunction should have issued. We remanded to the district court and instructed that court to issue an injunction. The district court did so. At no time could the defendant have been in contempt of this court because no order had been issued by us directed at restricting his actions. It was the district court injunction which he violated. It is only that order of which he is in contempt, if indeed he is in contempt at all. I hold we should remand to the district court for entry of an order either finding the defendant to be in contempt or finding him to be innocent thereof. We can then, if necessary, review the matter on appeal under usual rules of procedure.

The vice of the present finding by the majority is the holding defendant is in contempt *of this court*. I find that to be entirely unacceptable. First we find him in contempt; then we impose a fine of $250.00. Up to this point we have ignored the right of the district court to make an original finding of contempt regarding one of its own injunctions. Then, however, we provide if defendant fails to pay the fine the *district court* shall determine what punishment he shall have in lieu thereof. If the contempt is of this court, as the majority insists, and if we are to fix the punishment, then we should completely dispose of the matter.

I would remand for entry of an appropriate judgment on the contempt matter; but in any event if we are to make the finding of contempt on the present record,

then we should completely and fully determine the punishment to be imposed.

I would affirm as to Division II and reverse and remand as to Division III.

MOORE, RAWLINGS and BECKER, JJ., join in this dissent.